87 F.Supp. 568 (1949)
UNITED STATES
v.
BURGMAN.
No. 442-49.
United States District Court District of Columbia.
December 15, 1949.
*569 William A. Paisley, and Victor C. Woerheide, both of Washington, D. C., for the United States.
James J. Laughlin and William E. Owen, both of Washington, D. C., for defendant.
HOLTZOFF, District Judge.
The defendant has been convicted of treason and moves for a new trial.
On December 11, 1941, when war was declared between the United States and Germany, the defendant was a member of the staff of the American Embassy in Berlin. The entire personnel, with the exception of the defendant, immediately left the German capital and was interned. The defendant voluntarily stayed behind. In February, 1942, he accepted employment from the German Broadcasting Company, which was controlled by the German Government. A clandestine shortwave radio station was established by the company in Berlin, for the purpose of broadcasting propaganda to the United States. The station was given the name "Station Debunk", and purported to operate somewhere in the Middle West. The defendant was employed as commentator and speaker on these broadcasts. He prepared the manuscripts containing pro-German propaganda, and made recordings of this material, which was broadcast to the United States by means of short wave radio. The aim of the broadcasts was to sow discontent with the Government of the United States, to impair the morale of the armed forces, and to create dissension between the American people and the people of the allied countries. Many of the broadcasts were caught by a United States Government monitoring station maintained at Silver Hill, Maryland.
The jury found the defendant guilty and also answered affirmatively special interrogatories to the effect that the Government established thirteen overt acts of treason as having been committed by the defendant. Each overt act consisted of making a specific recording.
There have been comparatively few trials for treason in the history of the United States. Not a single execution for treason has occurred in this country since the adoption of the Constitution. In England, for several centuries preceding the Revolution of 1688, treason trials were common and frequently took place when one faction took the control of the Government away from another. The definition of treason was carried to an extreme. Howell's State Trials are replete with reports of these cases. On the other hand, the annals of American jurisprudence disclose a wholesome freedom from charges of treason based on considerations of politics or vindictiveness. In part this salutary result is to be ascribed to the moderation and self-restraint of our people. In part it is to be attributed to the keen foresight and profound wisdom of the Founding Fathers. The Constitution of the United States explicitly defines the crime of treason. Nothing that fails to fit within the framework of this definition may be regarded as treason. Article III, Section 3, Clause 1, of the Constitution provides as follows: "Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court."
Congress has enacted the following statute defining treason, 18 U.S.C.A. § 2381: "Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined not less than $10,000; and shall be incapable of holding any office under the United States."
Thus, there are only two types of treason against the United States: first, levying war against the United States; and second, *570 adhering to their enemies, giving them aid and comfort.
As the reported treason cases are comparatively few, it may be useful to review them briefly in chronological order.
The first prosecutions of this type arose out of the Whiskey Rebellion. Some of the leading rebels were charged with levying war against the United States in connection with their attempts to resist the enforcement of the internal revenue laws.[1] A rather curious prosecution for treason, which did not result in conviction, took place several years later in connection with an insurrection in Pennsylvania against the enforcement of an Act of Congress providing for numbering and measuring windows as a basis for taxation.[2]
The most famous and spectacular treason case in the history of the United States, dealt with the Burr conspiracy. It was tried before Chief Justice Marshall, sitting at circuit. Aaron Burr was charged with levying war against the United States, in that he conspired with others to detach from the United States a part of the territory bordering on the Mississippi River, and to establish an independent dominion. The trial ended in a verdict of not guilty.[3]
Another prosecution for treason took place in 1808 in the District of Vermont. The defendant was accused of levying war against the United States in connection with some activities intended to oppose the enforcement of the Embargo Act. It was held that these actions did not constitute treason, as they were carried on for a private object, rather than for the purpose of subverting the Government.[4]
Several prosecutions for treason were instituted during the war of 1812. In one case the defendant was indicted for adhering to the enemies of the United States by supplying them with food, showing them the channels of the Potomac River and informing them of the location of troops of the United States.[5] Another case involved the return of some British prisoners to the British commander.[6] In still another case the defendant was charged with adhering to the enemy in that he went ashore from a British ship on which he had been held as a prisoner. The accusation was that his purpose was to unite with the enemy in acts of hostility.[7]
An endeavor to prosecute as treason the participation in a riot to resist the enforcement of the Fugitive Slave law, met with failure.[8]
It is greatly to the credit of the American people that the Civil War did not give rise to numerous charges of treason. An attempt to prosecute Jefferson Davis ended after long delays with a dismissal of the indictment on a technicality.[9] One person was accused of treason in that he fitted out a schooner for privateering purposes.[10] There appear to be no other reported cases of treason arising out of the Civil War.
World War I gave rise to only a couple of treason cases. They involved the harboring of hostile spies and conveying information to the enemy.[11] In the light of the *571 far-reaching ramifications of World War II and the unprecedented magnitude of the armed forces of the various belligerents, it is not surprising that a number of treason prosecutions were among the consequences of this stupendous global conflict. In one case the defendant was convicted of treason consisting of harboring and assisting an escaped German prisoner of war.[12]. In two cases, the defendants were charged with aiding and sheltering German saboteurs, who were landed on American soil from German submarines.[13]. Several cases, one of which has reached the appellate courts, involved persons who had acted as radio commentators in enemy countries in time of war and in that capacity prepared anti-American propaganda material for broadcasting by radio.[14]. A similar case arose in England.[15]. The case at bar falls in this group.
The principal point advanced by the defendant is that the preparation and making of speeches does not, in itself, constitute treason. It is presumably contended that the defendant was exercising his right of freedom of speech guaranteed by the First Amendment. This position is not tenable. The right of freedom of speech is not unqualified or absolute.
Actions may assume the form of oral pronouncements. The utterance of words frequently constitutes a crime. For example, to advocate the overthrow of the government by force and violence, to urge some one to commit a crime, to disseminate obscene literature, to foment a riot, are all criminal offenses, even if they are committed merely by verbal statements. Words uttered with intent to betray one's country may well constitute treason. For instance, to deliver valuable secret information to the enemy by word of mouth is treason. It is a fallacy to contend that to constitute treason there must be some act other than the utterance of words. To traffic with the enemy and to accept employment from the enemy for the purpose of preparing speeches to be used in a program of psychological warfare designed by the enemy to weaken the power of the United States to wage war successfully, is treasonable conduct. It is not protected by the First Amendment. Acting as a radio commentator, as the defendant did in this case, for the purpose of spreading and disseminating pro-enemy propaganda, constitutes treason.
The same point was raised in the First Circuit in Chandler v. United States, 171 F.2d 921, 938-940, and was overruled in an able and scholarly opinion written by Judge Magruder.
It is further urged in behalf of the defendant that the admission in evidence of recordings made by him, and playing them at the trial, was a violation of the right against self-incrimination under the Fifth Amendment. This contention seems to involve a misconception of the privilege. The Fifth Amendment safeguards the right of every defendant not to be required to testify against himself. This doctrine is basic and fundamental in Anglo-American jurisprudence. It does not, however, bar proof of words spoken by the defendant. It is on this principle that statements and confessions made by defendants are admissible in evidence. If a stenographer recorded the defendant's oral statements, the stenographer would be a competent witness to testify to their contents. Modern technical developments, however, have made it possible to record statements by mechanical and electrical devices and later to reproduce the speaker's words in his own voice. Recordings of this type are equally admissible in evidence, and their introduction does not transcend the limitations of the Fifth Amendment.
The defendant finally raises an objection as to venue. The pertinent statute *572 provides that the trial of all offenses committed out of the jurisdiction of any particular State or district, shall be in the district where the offender is found or into which he is first brought, 18 U.S.C.A. § 3238. In this case the defendant was brought from Germany to the United States by airplane and landed first in the District of Columbia. Under these circumstances the District of Columbia is the district into which the accused was first brought, Chandler v. United States, supra, 171 F.2d at page 933. Consequently, this court has jurisdiction and venue is properly laid in this district.
Motion for a new trial is denied.
NOTES
[1] United States v. Vigol, 1795, 28 Fed. Cas. page 376, No. 16,621; United States v. Mitchell, 1795, 26 Fed.Cas. page 1277, No. 15,788.
[2] United States v. Fries, 1799, 9 Fed.Cas. page 826, No. 5126.
[3] United States v. Burr, 1807, 25 Fed.Cas. page 55, No. 14,693; see also Ex parte Bollman and Ex parte Swartwout, 1807, 4 Cranch 75, 126, 2 L.Ed. 554.
[4] United States v. Hoxie, 1808, 26 Fed. Cas. page 397, No. 15,407.
[5] United States v. Lee, 1814, 26 Fed.Cas. page 907, No. 15,584.
[6] United States v. Hodges, 1815, 26 Fed. Cas. page 332, No. 15,374.
[7] United States v. Pryor, 1814, 27 Fed. Cas. page 628, No. 16,096.
[8] United States v. Hanway, 1851, 26 Fed. Cas. page 105, No. 15299.
[9] Case of Jefferson Davis, 7 Fed.Cas. page 63, No. 3621-A.
[10] United States v. Greathouse, 1863, 26 Fed.Cas. page 18, No. 15254.
[11] United States v. Frieke, D.C., 1919, 259 F. 673; United States v. Robinson, D.C., 1919, 259 F. 685.
[12] Stephan v. United States, 6 Cir., 133 F. 2d 87, certiorari denied 318 U.S. 781, 63 S.Ct. 858, 87 L.Ed. 1148.
[13] Cramer v. United States, 1945, 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441; Haupt v. United States, 1946, 330 U.S. 631, 67 S.Ct. 874, 91 L.Ed. 1145.
[14] Chandler v. United States, 1 Cir., 1948, 171 F.2d 921.
[15] Joyce v. Director of Public Prosecution, 1946, Appeal Cases 347.