**Ottis Mayo JONES**

v.

**FEDERAL BUREAU OF INVESTIGATION—United States of America.**

**Civ. No. 8703.**

United States District Court
D. Maryland, Civil Division.

March 8, 1956.

1. Sweeney v. Patterson, 1942, 76 U.S.App.D.C. 23, 128 F.2d 457, did not reach the question of privilege.

Ottis Mayo Jones, pro se.

George Cochran Doub, U. S. Atty., and Robert R. Bair, Asst. U. S. Atty., Baltimore, Md., for defendants.

THOMSEN, Chief Judge.

Appearing specially by the United States Attorney, the government has moved, inter alia, to dismiss the complaint filed by the plaintiff in proper person against Federal Bureau of Investigation—United States of America. The questions presented are: whether the action is against the Federal Bureau of Investigation or the United States; whether the Federal Bureau of Investigation is suable.; whether the venue is properly laid in the District of Maryland; and whether the complaint states a claim upon which relief can be granted.

The complaint contains nine "points", a preliminary paragraph and a concluding paragraph. It begins: "Plaintiff, Ottis Mayo Jones, for himself, and in behalf of Florence, his wife, Michael, his 8-year-old son, David and Davida, his one-year-old twins, come now & respectfully shows: That, he and his family are citizens of the United States of America and that they now reside in the City of Baltimore, Maryland, within the jurisdiction of this Court."

Point One alleges: "On October 27, 1955 at Motel '66', in Monrovia, California, J. Robert Sullivan and Ira J. Kellogg, both Special Agents of the F. B. I., along with two other unidentified men and Mr. Chew, Mgr. of Motel '66', did, then and there, illegally, feloniously and without legal process, steal, rob and carry away more than 40 pieces of property, belonging to Plaintiff and his family, with intent to convert said property to their own use."

Point Two alleges that at the same time and place "J. Robert Sullivan, Ira J. Kellogg and two other unidentified men did abuse, threaten and horrify Plaintiff's very sick wife and three little children for a period of 20 to 30 minutes, behind closed doors, while they held Plaintiff helplessly bound in a nearby car under guard of Mr. Chew and an unidentified man. Said cruel and inhuman treatment continued in full force and effect until Plaintiff's very sick wife came from apartment #9, staggered and fell face down on the pavement—completely and limply fainted."

Points Three to Seven, inclusive, are similar to Point Two in that they make no reference to the Federal Bureau of Investigation, but allege that "on October 27, 1955, at Motel '66' aforesaid," Sullivan and Kellogg (Three) did "cruelly, beastly and with blind disregard for sex or sanity, pick up Plaintiff's very sick wife from the pavement" and carried her into apartment #9; (Four) did "abuse, frighten and criminally horrified" Michael, David and Davida "by dragging their very sick and fainted mother into their presence"; (Five) did "with force and threat of violence kidnap Plaintiff and Plaintiff's family in two respects: (A) By refusing to allow any member of Plaintiff's family to leave apartment #9 and watch as they robbed, stole and carried away property, without legal process, from apartment #7 and from an inclosed trailer, which also belonged to Plaintiff. And, (B) By carrying Plaintiff away during the nighttime without legal process while leaving Plaintiff's very sick wife lay helplessly in a fainted condition and three little children confined without any sane measurement of protection"; (Six) with Chew and two unidentified men, did "create circumstances which caused Plaintiff to solicit the cooperation of the United States Commissioner to obtain welfare care" for his wife and children, as a result of which "little tiny Davida's hair was cut without permission"; and (Seven) with Chew and the two unidentified men, did "create and commence a chain of driving circumstances which caused Plaintiff to beg money from the Los Angeles County Welfare" for his family, and caused the family to travel by train from Los Angeles to Baltimore.

Point Eight alleges that "On January 6, 1955 in Baltimore, Maryland, in the office and presence of the United States Marshal, Plaintiff gave to Mr. D. K. Brown a full statement of facts reflecting a true description of each and every act by said Agents and that statement of facts, as far as Plaintiff knows, was

either ignored or 'pigeon holed' by the Baltimore Branch of the Federal Bureau of Investigation". Point Nine alleges that "The United States Government has refused to give any financial assistance to Plaintiff's very sick wife and three little children while they hold Plaintiff confined to jail under an excessive bond and fictitious charges lodged against him through perjury and criminal conspiracy by agents of the Federal Bureau of Investigation".

The concluding paragraph "asks for the return of Plaintiff's property and Judgment against Respondent in the amount of One Hundred Thousand, ($100,000.00) plus all cost and attorney fees".

██ It is difficult to tell from the complaint whether the plaintiff intended to sue the Federal Bureau of Investigation or the United States. At the hearing he stated that he did not understand the distinction; that he thought in order to sue the United States, he had to name the agency involved. I will therefore treat this action as against the United States under the Tort Claims Act. 28 U.S.C.A. §§ 1346, 1402, 2671–2680. If it should be considered a claim against the Federal Bureau of Investigation, it would have to be dismissed, since Congress has not constituted the Federal Bureau of Investigation a body corporate nor authorized it to sue or be sued. Cf. Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534.

Title 28 U.S.C.A. § 1402(b) provides: "Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."

Most of the acts complained of occurred in California, although the acts and omissions alleged in Points Eight and Nine occurred in Maryland. Determining the judicial district where plaintiff resides is not an easy matter. Testimony was taken on this question at the hearing held on the government's motion. Plaintiff was born in West Virginia in 1913; his mother still lives there, but his father, Erastus E. Jones, came to Maryland about five years ago and still lives here. Plaintiff lived in Michigan in the late 1930's, was convicted of crime there in 1939, and was in and out of prison from 1939 to 1952, when he was released on parole from Atlanta. He visited his mother in West Virginia for three weeks, and then "transferred" to Baltimore, and went to live with his father here. Plaintiff worked at Sparrows Point for a few weeks, and then sold automobiles and insurance in Baltimore for about a year. He met his "wife" here, and began to live with her, but there was no marriage ceremony, since she is married to someone else. Sometime in 1953 or 1954 the insurance company for which he had been selling ordered him to cancel all the policies he had sold. Since he had no money to cover the portion of the unearned premiums represented by his commissions, and since there was some trouble about the Michigan parole, he and his "wife" and her son pulled up stakes and set out for Florida. They have been traveling ever since, and have visited forty-five states. The longest stay was in Columbia, South Carolina, where the twins were born, and plaintiff worked as a car dealer and taught school for five months until his wife was able to move. They had an auto and a two-wheel trailer, and in 1955 were in California for about two months, living in motels on a day to day basis. The night before he was arrested he had spent at the motel in Monrovia, California; the night before that he had spent in Las Vegas, Nevada. He was indicted in the District of Maryland on a number of counts involving falsely made and forged drafts; he was brought to the Baltimore City jail; and as he notes in his "traverse" to the government's motion, he was "convicted" on February 2, 1956, by a jury before Judge Chesnut, and was sentenced to prison. In the meantime his "wife" returned to Baltimore with the children, and was living

with her parents when this suit was filed.

As Judge Dobie pointed out, Commissioner of Internal Revenue v. Swent, 4 Cir., 155 F.2d 513, 515, the words "residence" and "resides" are very slippery words, which have many and varied meanings. Sometimes, in statutes, residence means domicile; sometimes it does not. In King v. Wall & Beaver St. Corp., 79 U.S.App.D.C. 234, 145 F.2d 377, 379, construing the venue provisions of Title 28, Chief Justice Groner said: "it is well established that the words 'inhabitant' and 'resident in', as used in Section 51 of the Judicial Code, mean neither more nor less than legal domicile, as the result of which jurisdiction except by consent is confined to the district in the State of which one or the other of the parties is a citizen." In Townsend v. Bucyrus-Erie Co., 10 Cir., 144 F.2d 106, 108, the court held that while "state citizenship", as used in sec. 24 of the Judicial Code, 28 U.S.C.A. § 41(1), and "residence in a judicial district" for venue purposes under sec. 51, 28 U.S. C.A. § 112, are not synonymous or convertible terms, nevertheless they are related or cognate terms, and the existence of one, although not conclusive, is cogent evidence of the other. "They both embody the concept of domicile or a place called home as distinguished from a transitory or temporary place of abode." 144 F.2d at page 109. See also Ex parte Shaw, 145 U.S. 444, 12 S.Ct. 935, 36 L.Ed. 768; Bicycle Stepladder Co. v. Gordon, C.C.N.D.Ill., 57 F. 529; Edgewater Realty v. Tennessee Coal, Iron & R. Co., D.C.Md., 49 F.Supp. 807, 808. In Penfield v. Chesapeake, O. & S. W. R. Co., 134 U.S. 351, 10 S.Ct. 566, 568, 33 L.Ed. 940, Mr. Justice Harlan, the elder, quoted from Frost v. Brisbin, 19 Wend., N.Y., 11, as follows: " '* * * the transient visit of a person for a time at a place does not make him a resident while there; that something more is necessary to entitle him to that character. There must be a settled, fixed abode,—an intention to remain permanently, at least for a time, for business

or other purposes,—to constitute a "residence," within the legal meaning of that term.' "

The fact that plaintiff was in jail in Maryland awaiting trial when he filed the suit appears to be immaterial. U. S. v. Stabler, 3 Cir., 169 F.2d 995; U. S. v. Gronich, D.C.W.D.Wash., 211 F. 548.

Although the question is not free from doubt, I conclude that plaintiff resides in the District of Maryland within the meaning of 28 U.S.C.A. § 1402.

That brings us to the question whether the complaint states a claim against the United States on which relief can be granted. Points One, Five and Seven allege the taking by special agents of the Federal Bureau of Investigation and others and the conversion "to their own use" of property of plaintiff and his family. If plaintiff intends to charge a detention of the property by the agents in the exercise of their duties, the claims are excepted from the provisions of the Tort Claims Act by sec. 2680(c). Chambers v. U. S., D.C.D. Kan., 107 F.Supp. 601. On the other hand, if plaintiff intends to charge that the agents and others stole the property and converted it to their own use, then they were not "acting within the scope of [their] office or employment". 28 U.S.C.A. § 1346(b). Restatement of the Law, Agency, secs. 229–231; 2 Mechem, Agency, secs. 1953, 1962; Paly v. U. S., D.C.D.Md., 125 F.Supp. 798, affirmed 4 Cir., 221 F.2d 958. Cf. Johnson v. Monson, 183 Cal. 149, 190 P. 635.

Points Two, Three, Four and Six allege assault and battery upon plaintiff and plaintiff's alleged wife and children. Such claims are excepted from the provisions of the Tort Claims Act by sec. 2680(h). Stepp v. U. S., 4 Cir., 207 F.2d 909. Points One, Five and Nine appear to allege false imprisonment, false arrest and abuse of process. These claims are also excluded from the provisions of the Tort Claims Act by sec. 2680(h). It is hard to tell what plaintiff intends to

allege by point Eight, but any possible tort alleged therein comes within the "discretionary function or duty" exception. Sec. 2680(a). Dalehite v. U. S., 346 U.S. 15, at pages 35–36, 73 S.Ct. 956, 97 L.Ed. 1427.

The complaint must be dismissed because it does not state a claim against the United States upon which relief can be granted. It is so ordered.