Robert G. THOMPSON, Plaintiff,

v.

Sumner G. WHITTIER, Administrator of
Veterans Affairs, Defendant.

Civ. A. No. 1853-59.

United States District Court
District of Columbia.

June 27, 1960.

As Amended Nov. 10, 1960.

Fahy, Circuit Judge, dissented.

Mary M. Kaufman, Brooklyn, N. Y., and Joseph Forer, Washington, D. C., for plaintiff.

Cecil R. Heflin, Homer H. Kirby, Jr., and Oran H. Waterman, Dept. of Justice, Washington, D. C., for defendant.

Before FAHY, Circuit Judge, and HOLTZOFF and KEECH, District Judges.

HOLTZOFF, District Judge.

The plaintiff, Robert G. Thompson, is a veteran of World War II, who was in receipt of compensation from the Veterans Administration for a service connected disability. The Veterans Administration terminated the payments on the authority of 38 U.S.C. § 3504, on the basis of a finding that he had aided an enemy of the United States during the Korean Conflict. This action is brought for the purpose of setting this ruling aside on the alleged ground that the foregoing statute is unconstitutional, as well as on the alleged grounds that the Administrator misconstrued the statute; that the procedure followed by him was lacking in due process of law; and that his finding of fact is not sustained by substantial evidence. Inasmuch as a question of constitutionality of an Act of Congress was raised, this three-judge

court was convened.[1] Both parties moved for summary judgment and the case is now before the court on these cross-motions. We uphold the constitutionality of the statute and sustain the decision of the Veterans Administration.

The following undisputed facts appear from the papers attached to the motions and the rulings of the various agencies of the Veterans Administration. The plaintiff served in the United States Army from November 28, 1941 to August 23, 1943, when he was honorably discharged. During his term of service he received the Distinguished Service Cross. He was awarded compensation by the Veterans Administration for pulmonary tuberculosis, which was found to be service connected. On October 14, 1949, he was one of a number of defendants who were convicted in the United States District Court for the Southern District of New York, on a charge of knowingly and wilfully conspiring to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence. This conviction was affirmed by the Court of Appeals for the Second Circuit, United States v. Dennis, 183 F.2d 201, and later by the Supreme Court, Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. The decision of the Supreme Court was rendered on June 4, 1951. Early in July, 1951, when the plaintiff was under an order to surrender to serve his sentence, he disappeared, became a fugitive, and remained in hiding until he was found and taken into custody a couple of years later. In view of the fact that his whereabouts were unknown, no compensation was paid him subsequently to June 30, 1951.

On April 29, 1955,—after the plaintiff had been apprehended,—the Central Committee on Waivers and Forfeitures, an agency of the Veterans Administration, determined that the award of compensation to the plaintiff should be set aside on the ground that he had aided an enemy of the United States during the Korean Conflict. Pursuant to the prescribed procedure the plaintiff appealed to the Board of Veterans Appeals, which was an appellate agency within the Veterans Administration. In accordance with his request, a full hearing was accorded to him by the Board. A summary of the evidence against him was submitted to him in advance of the hearing. He was granted an opportunity to introduce evidence and ·to present an argument and a brief. In effect, the proceeding before the Board of Appeals was a trial *de novo*. On July 31, 1956, the Board affirmed the prior action of the Committee in a lengthy and comprehensive opinion. Subsequently the plaintiff requested a reconsideration, which was denied on May 5, 1959, again in a detailed opinion. The Veterans Administration, while setting aside the award of compensation to the plaintiff, apportioned and allocated to the plaintiff's dependent wife and children for direct payment to them, an appropriate portion of the amount previously paid to him.

In brief the evidence on which the Committee and the Board acted, showed that the plaintiff had joined the Communist Party in 1933 and became a member of various groups within the party. In August 1935, he went to Russia as an adviser to the Sixth World Congress of the Young Communist International Congress and remained there for over a year, working as a machinist and attending lectures and courses in Marxism-Leninism. In January 1937, he fought with the International Abraham Lincoln Brigade of the Spanish Republican Army. He returned to the United States in 1938 and became the State Secretary of the Young Communist League at Columbus, Ohio, and later a national vice president of the Young Communist League. In 1941, he transferred his activities to New York City, where he worked for the Young Communist League, until he entered the armed forces. After his discharge from the military service, he be-

1. 28 U.S.C. § 2282.

came national secretary of the Young Communist League, and a contributor to "the Daily Worker",—a publication of the Communist Party. He was an active member of various organizations within the Communist Party. As above stated, he was convicted in the Southern District of New York, on a charge of violating the Smith Act, 18 U.S.C. § 2385, and this conviction was affirmed first by the Court of Appeals for the Second Circuit, and then by the Supreme Court. After July 2, 1951, he avoided apprehension for over two years and was finally arrested on August 27, 1953, in California.

The evidence of plaintiff's activities prior to the beginning of the Korean Conflict, which commenced on June 27, 1950, was considered by the Veterans Administration solely as casting light upon the plaintiff's intent in committing the specific acts subsequently to June 27, 1950, on the basis of which the award of compensation was vacated. These activities consisted of various speeches made by the plaintiff at meetings and conventions of Communist organizations during the Korean Conflict. These statements were designed to weaken and hinder the military and economic efforts of this country. Among these utterances were the following: that "mass action now can still halt a Police State"; that "American imperialism is hiding behind the skirts of the Negro GI in Korea"; a demand for the withdrawal of the United States troops from Korea; criticism of the "gigantic armament program" and its costs; an assertion that "the Truman 'get tough with Russia policy' means in the last analysis get tough with the American people"; that "the way of life of the working people * * * daily becomes more cruelly affected and more viciously warped with each war move of the Wall Street bankers and the Washington politicians"; references to the war effort of the United States as "the savage Tru-

man-MacArthur war of aggression" in Korea; as well as similar utterances.

The pertinent statutory provisions are as follows:

38 U.S.C. § 310:

"For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is the result of the veteran's own willful misconduct." [2]

38 U.S.C. § 3503(a):

"(a) Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by the Veterans' Administration (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Veterans' Administration (except laws pertaining to insurance benefits)."

38 U.S.C. § 3504(a) and (b):

"(a) Any person shown by *evidence satisfactory to the Administrator* (to) be guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States or of its allies shall forfeit

2. For facility of reference the citations are to the 1958 revision of Title 38, rather than to the earlier section numbers, but the text of the various statutory provisions is substantially the same as heretofore.

all accrued or future gratuitous benefits under laws administered by the Veterans' Administration.

"(b) The Administrator, in his discretion, may apportion and pay any part of benefits forfeited under subsection (a) to the dependents of the person forfeiting such benefits. No dependent of any person shall receive benefits by reason of this subsection in excess of the amount to which he would be entitled if such person were dead." (Emphasis supplied.)

■ It is contended by the plaintiff that Section 3504 is repugnant to the Constitution in that it is a bill of attainder and an *ex post facto* law; that it is lacking in due process of law; and that it fails to formulate a definite standard of guilt. These contentions are predicated on the major premise that the result contemplated by Section 3504 is additional punishment for the offenses to which it refers. On the other hand, it is argued by counsel for the Government that this provision merely sets forth additional qualifications for eligibility to receive gratuitous payments from the Government, and does not involve any penalty or punishment.

■■ The basic question to be determined on this aspect of the case is, therefore, whether a discontinuance of compensation for any of the causes enumerated in Section 3504, constitutes punishment or is to be regarded as failure to qualify for the receipt of the gratuity. In support of their position that it is to be deemed punishment, counsel for the plaintiff point to the use of the word "forfeit" in the text of the statute. The matter, however, may not be disposed of in this manner. Substantial rights may not be immolated on the altar of semantics. They may not be determined on the basis of precision in the use of terminology or felicity in the choice of words. The question is to be resolved on the basis of the purpose of the statute and the intent of Congress. This is particularly true in this instance since "forfeiture" is not a word of art. It may have any one of several meanings and its exact significance depends on the context in which it is used or on the connection in which it is employed. Under some circumstances the term "forfeiture" may mean a punishment or penalty; under other conditions it may be used in a purely remedial sense as a loss or deprivation resulting as a consequence of specified activities or events.

The latest and one of the most explicit discussions of this point is to be found in an opinion of Chief Justice Warren in Trop v. Dulles, 356 U.S. 86, 95 et seq., 78 S.Ct. 590, 595, 2 L.Ed.2d 630:

"Each time a statute has been challenged as being in conflict with the constitutional prohibitions against bills of attainder and *ex post facto* laws, it has been necessary to determine whether a penal law was involved, because these provisions apply only to statutes imposing penalties. In deciding whether or not a law is penal, this Court has generally based its determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature. The point may be illustrated by the situation of an ordinary felon. A person who commits a bank robbery, for instance, loses his right to liberty and often his right to vote. If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statute authorizing both disabili-

ties would be penal. But because the purpose of the latter statute is to designate a reasonable ground of eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise."

In Helvering v. Mitchell, 303 U.S. 391, 399–400, 58 S.Ct. 630, 633, 82 L.Ed. 917, in an opinion written by Mr. Justice Brandeis, the Supreme Court held that penalties for fraud under the income tax laws, constitute an additional remedy, rather than a criminal sanction. In discussing this subject, the learned Justice stated:

"The question for decision is thus whether § 293(b) imposes a criminal sanction. That question is one of statutory construction. * * *

"Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted.

"Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforcible by civil proceedings since the original revenue law of 1789. Act of July 31, 1789, c. 5, § 36, 1 Stat. 29, 47. In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions."

In Davis v. Beason, 133 U.S. 333, 347, 10 S.Ct. 299, 33 L.Ed. 637, the Court had before it for consideration a statute of the Territory of Idaho, which excluded from the privilege of voting, or of holding any office of honor, trust or profit, any person who was convicted of certain offenses, as well as any person who advocated resistance to the laws of the Territory, or justified or approved the commission of crimes forbidden by it. The Court construed the statute as simply excluding the specified classes of persons from the privilege of voting or of hold-

ing office, and held that the Act was not open to any objection on constitutional grounds.

In United States v. Landers, 92 U.S. 77, 79, 23 L.Ed. 603, it was held that a statute imposing a forfeiture of a soldier's pay on the ground of desertion, was not a punishment, and the fact of desertion did not have to be established by the finding of a court-martial, but might be determined administratively. This ruling was followed in United States v. Kingsley, 138 U.S. 87, 91, 11 S.Ct. 286, 34 L.Ed. 896.

■■ It follows that the use of the term "forfeiture" is not determinative of the question whether Section 3504 provides punishment or prescribes an additional qualification for the award of compensation. The matter depends upon the intention of the Congress. It must be borne in mind that we are dealing with a gratuity or a gift. It is not an annuity to which the veteran has contributed, or insurance for which he has paid premiums. The Congress obviously has it within its power to grant or withhold gratuities in its discretion. It determined to pay such a gratuity to veterans suffering from a service connected disability, but it made an exception as against such veterans as were guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States. It seems natural that Congress would withhold gratuities from persons whose activities might undermine the very existence of the government of the United States. While it is far from conclusive, nevertheless the circumstance that this Section was included by Congress in the Title of the Code relating to "Veterans' Benefits", rather than in the Criminal Code, is some indication of legislative intent that the provisions of Section 3504 should not be deemed as imposing an additional punishment for the offenses therein enumerated.

We are of the opinion, therefore, that Section 3504 does not seek to impose punishment, but merely prescribes an addi-

tional qualification for eligibility to receive a gratuity.*

The authorities on which the plaintiff relies are distinguishable. Cummings v. State of Missouri, 4 Wall. 277, 71 U.S. 277, 18 L.Ed. 356, and Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366, involved statutes that barred persons from practicing certain professions or pursuing specified occupations, unless they took an oath to the general effect that they had not participated in any armed hostility against the United States or manifested adherence to the cause of any enemy of the United States, foreign or domestic, or had any sympathy with those engaged in rebellion. The statutes in question had been enacted during the Reconstruction era after the Civil War. Manifestly there is a vast distinction in principle between barring a person from earning a livelihood in his chosen endeavor and refusing to pay him a discretionary gratuity out of Government funds.

Speiser v. Randall, 357 U.S. 513, 78 S. Ct. 1332, 2 L.Ed.2d 1460, involved a California statute which granted certain tax exemptions to veterans, but required them, in order to secure the benefit of the exemption, to take an oath that they had not advocated the overthrow of the Government by force or violence, or by other unlawful means. The statute was held unconstitutional purely because of what was deemed by the Supreme Court a vital procedural defect, in that it construed the measure as placing the burden of proof on the claimants to the exemption. The Supreme Court did not hold that it was unconstitutional to deny the tax exemption to those veterans who refused or who were unable to take the required oath.

We conclude, therefore, that 38 U.S.C. § 3504 is constitutional and valid.

It is further urged by the plaintiff, however, that even if the statute is not repugnant to the Constitution, the Veterans Administration misconstrued the Act; that the procedure provided by it was lacking in due process; and that the conclusion of the Board is not supported by the evidence.

At the threshold, however, the plaintiff is confronted by the contention of the Government that the action of the Administrator of Veterans Affairs is final and is not subject to review. This contention is based on 38 U.S.C. § 211 (a), which reads as follows:

"(a) Except as provided in sections 784, 1661, 1761, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision."

It is well settled that the Government may not be sued without its consent and that, therefore, it is under no obligation to accord a judicial remedy in respect to claims against itself. Therefore, statutes either denying or withdrawing judicial remedies against the United States in respect to claims against it are constitutional. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L. Ed. 1434. A fortiori this must be true in respect to gratuities and grants. Thus in Van Horne v. Hines, 74 App.D.C. 214, 216, 122 F.2d 207, 209, Groner, C. J., wrote as follows:

"There can be no doubt that veterans' benefits are gratuities and establish no vested rights in the recipient. * * * And this being so, such benefits may be withdrawn at any time by act of Congress, and to make the withdrawal effective,

---

* Additional support for that conclusion is lent by the decision of the Supreme Court in Flemming v. Nestor, 80 S.Ct. 1367, decided June 20, 1960 subsequent-

ly to the preparation of this opinion. Among other matters the Flemming case holds that a "denial of a noncontractual governmental benefit" is not punishment.

'Congress may in turn withdraw jurisdiction from the courts over decisions of the Administrator in relation thereto. * * *

"And this brings us to the single question, whether the act on its face shows that Congress meant to withdraw from the jurisdiction of the courts every final decision of the Administrator in relation to benefit payments in the nature of gratuities provided for under the act. We think this unmistakable intent is shown by the language of the act, and that the plain meaning of the words used bring us necessarily to this result, for the language is that the court shall not consider or review questions of law or fact 'concerning a claim for benefits or payments'. The words—concerning a claim for payments—can have no other meaning than—having relation to—such payments, and whatever the language of the prayer of the present complaint, the obvious purpose of the suit is to require the Administrator to resume benefit payments to appellant which the Administrator has decided appellant has forfeited all right to."

The following cases hold to the same effect: Hahn v. Gray, 92 U.S.App.D.C. 188, 203 F.2d 625; Sinlao v. United States, 106 U.S.App.D.C. 263, 271 F.2d 846; Magnus v. United States, 7 Cir., 234 F.2d 673.

This provision is equally applicable to decisions terminating, discontinuing, or declining to renew payments as it is to original decisions on claims for compensation.[3] Van Horne v. Hines, supra; Sinlao v. United States, supra. The conclusion is inescapable that the governing statute bars judicial review of the action of the Veterans Administration in this instance, and we so hold.

Assuming, however, *arguendo*, that the decision of the Veterans Administration was subject to judicial review, we would reach the following conclusions.

Section 3504 comprehends four different grounds for denying or discontinuing the payment of gratuitous benefits to a veteran, i. e., a finding on evidence satisfactory to the Administrator that the veteran has been guilty of mutiny; that he has been guilty of treason; that he has been guilty of espionage; or that he has been guilty of rendering assistance to any enemy of the United States or its allies. It should be observed that the statute is phrased in the disjunctive and not conjunctive. In this instance, the Administrator on evidence satisfactory to him found that the veteran had rendered assistance to an enemy of the United States during the Korean Conflict.

■■ The procedure pursued by the Veterans Administration was proper and in accordance with the formula enunciated by the Supreme Court in Morgan v. United States, 304 U.S. 1, 18–19, 58 S.Ct. 773, 82 L.Ed. 1129. A full hearing was accorded to the plaintiff. He was given notice of the claims and contentions of the Government with a detailed summary of the evidence supporting them, and was accorded an opportunity to meet them and present evidence and argument. The Constitutional requirement of confrontation with witnesses is limited only to criminal cases. The fact that the hearing was granted to the plaintiff at the appellate stage, instead of at the initial level is immaterial. Mr. Justice Stone in Opp Cotton Mills v. Administrator, 312 U.S. 126, 152, 61 S.Ct. 524, 536, 85 L.Ed. 624, stated:

"The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective."

3. An entirely different principle governs in cases in which the United States is the claimant and seeks affirmative relief by way of refund or repayment. De Espiritu v. United States, decided by this Court May 25, 1960, 183 F.Supp. 872.

The findings of fact and the conclusions of law made by the Veterans Administration are fully supported by substantial evidence. It is well settled that aid and assistance to the enemy may be extended in the form of verbal utterances alone, as was the case in this instance. Cramer v. United States, 325 U. S. 1, 29, 65 S.Ct. 918, 89 L.Ed. 1441; United States v. Burgman, D.C., 87 F. Supp. 568, 571; 88 U.S.App.D.C. 184, 188 F.2d 637; Gillars v. United States, 87 U. S.App.D.C. 16, 25, 182 F.2d 962; Chandler v. United States, 1 Cir., 171 F.2d 921, 938; Iva Ikuko Toguri D'Aquino v. United States, 9 Cir., 192 F.2d 338, 366.

In the light of the foregoing discussion, the defendant's motion for summary judgment is granted; and the plaintiff's cross-motion is denied.

KEECH, J., concurs.

FAHY, Circuit Judge (dissenting).

Plaintiff is a veteran who was receiving disability compensation for pulmonary tuberculosis connected with his military service during World War II, when the Soviet Union was our ally. For heroism the United States awarded him the Distinguished Service Cross. When we entered the Korean conflict he became highly critical and abusive of our participation. I think it is fair to say he became by speech and writings a protagonist of the communist position regarding Korea, in opposition to the policy of the United States, the United Nations and the Free World in general.

As a result the Administrator of Veterans Affairs decided that plaintiff had forfeited the disability benefits he had been receiving. The Administrator asserted as authority to do this the statute, set forth in the majority opinion, which at that time provided for forfeiture by a veteran of disability benefits upon a showing satisfactory to the Administrator that the veteran had been "guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States or of its allies * * *." 38 U. S.C. § 3504 (1958).

The Administrator did not find plaintiff guilty of mutiny, treason or sabotage, nor did his decision rest upon plaintiff's previous conviction under the Smith Act. In the case of another veteran the Court of Appeals for this Circuit had strongly intimated that a Smith Act conviction could not be the basis for forfeiture, that Act containing its own penalties. Wellman v. Whittier, 104 U.S.App.D.C. 6, 259 F.2d 163, opinion by Judge Danaher. The finding against the present plaintiff was that by speeches and articles he had been guilty of "rendering assistance to an enemy of the United States." I assume that this language describes an independent category of conduct and is not simply a modifying description of the immediately preceding categories of "mutiny, treason, sabotage."

The application of the language to the speech and writings of the plaintiff constitutes a direct penalty for, and restriction upon, the use of speech and press. This is obvious. The case is indistinguishable in this respect from Speiser v. Randall, 357 U.S. 513, 518, 78 S.Ct. 1332, 2 L.Ed.2d 1460.[1]

We are asked by the Administrator to hold that by the vague language he relies upon Congress intended this restriction on speech and press. So to hold would require us to decide the serious and delicate question whether the restriction violates the mandate of the First Amendment that "Congress shall make no law * * * abridging the freedom of speech, or of the press * *." If the statutory language can be reason-

---

1. "To deny an exemption [there a tax exemption to veterans] to claimants who engage in certain forms of speech is in effect to penalize them for such speech. Its deterrent effect is the same as if the State were to fine them for this speech. The appellees are plainly mistaken in their argument that, because a tax exemption is a 'privilege' or 'bounty,' its denial may not infringe speech * * *."

Speiser v. Randall, supra, 357 U.S. at page 518, 78 S.Ct. at page 1338.

ably interpreted so as to avoid penalizing the use of speech and press that interpretation should be adopted so that the constitutional issue is not reached for decision. Though not to be construed so as to destroy its effectiveness, a statute is to be construed "narrowly to avoid constitutional doubts." United States v. Harriss, 347 U.S. 612, 623, 74 S.Ct. 808, 815, 98 L.Ed. 989.

> * * * what Congress has written, we said through Mr. Chief Justice (then Mr. Justice) Stone, "must be construed with an eye to possible constitutional limitations so as to avoid doubts as to its validity." Lucas v. Alexander, 279 U.S. 573, 577, [49 S.Ct. 426, 428, 73 L.Ed. 851]. As phrased by Mr. Chief Justice Hughes, "if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598, and cases cited.

United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770.

In contrast with the statute involved in Flemming v. Nestor, 80 S.Ct. 1367, decided June 20, 1960, the language relied upon by the Administrator here is indefinite. It does not mention speech or writings. It can well be construed not to apply to these modes of expression, used however critically, when unaccompanied by conduct which, considered with what is said or written, would constitute a crime or at least would render direct assistance to the enemy. Gillars v. United States, 87 U.S.App.D.C. 16, 182 F.2d 962, held that speech as there used was not protected by the First Amendment since it constituted an element of the crime of treason. A construction which limits the restriction before us to comparable situations—that is, to situations where speech or writing is punishable or prohibitable without raising a serious issue under the First Amendment—is plainly indicated. See Speiser v. Randall, supra, 357 U.S. at pages 519–520, 78 S.Ct. at pages 1338–1339. Cf. Roth v. United States, 354 U.S. 476, 482–485, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

The language relied upon appears in immediate conjunction with "mutiny, treason, sabotage." I am not willing to hold that in this context Congress provided that a veteran receiving disability benefits could not criticize the Government's participation in a war. The grant by Congress of disability compensation to a veteran is not to be construed as an attempt by Congress to withdraw a veteran's First Amendment rights. The Administrator, not Congress, has applied the language to speech and writings, unaccompanied by direct assistance or criminal conduct. Of course the Administrator has done this in the belief Congress has authorized it. But I think this belief is a mistaken one. For under the decisions of the Supreme Court I cannot ascribe to Congress a deliberate penalization of the spoken or written word in the absence of much clearer language to show a purpose to do so. The language here used not only does not mention speech or press but is so general as to the type of conduct intended to be covered that serious doubts arise not only under the First Amendment but under the Due Process Clause.

The contrary view would permit a forfeiture because of some indirect or remote assistance to an enemy thought by the Administrator, rather than specified by Congress, to arise from critical speech or writings. A forfeiture might occur should a veteran step over a line so vaguely drawn as to be indiscernible. As the Supreme Court in another connection recently stated, in Greene v. McElroy, 360 U.S. 474, 507, 79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377:

> " * * * explicit action, especially in areas of doubtful constitutionality, requires careful and pur-

poseful consideration by those responsible for enacting and implementing our laws. Without explicit action by lawmakers, decisions of great constitutional import and effect would be relegated by default to administrators who, under our system of government, are not endowed with authority to decide them."

The subsequent history of the provision fortifies me in the view that the language is not applicable to speech or writing unaccompanied by more direct assistance to an enemy. The Administrator himself played a commendable part in this history by his communications to those Members of Congress, Senator Harry F. Byrd of Virginia, and Representative Olin E. Teague of Texas, who were in charge of amendments to the statute. The amendments enacted in 1959 have the effect, prospectively, in the case of a veteran who, like plaintiff, is a resident of or domiciled in a State when the acts relied upon for forfeiture occur, of permitting forfeiture only upon conviction of specified crimes. 38 U.S.C. §§ 3503(d), 3505 (Supp. I, 1959); H.R. Rep. No. 420, 86th Cong. 1st Sess. (1959); S. Rep. No. 664, 86th Cong. 1st Sess. (1959).

For the reasons set forth in the opinion of our Court of Appeals in Wellman v. Whittier, supra, I think the court has jurisdiction to review the administrative action in this case; and for the reasons above indicated I think the veteran is entitled to a judgment declaring the forfeiture of his service-connected disability benefits, on the grounds assigned by the Administrator, to have been unauthorized by Congress, and, therefore, invalid.

I have given my views on the merits because the three-judge court has taken jurisdiction, but under Flemming v. Nestor, supra, it appears the case is one for decision by a single District Judge.