John Raymond VAN BUSKIRK, William E. Badgett, Mrs. Helen F. Hubert

v.

UNITED STATES of America.

Civ. No. 4299.

United States District Court
E. D. Tennessee, N. D.

May 25, 1962.

William E. Badgett, Knoxville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

On September 18, 1961, John Raymond Van Buskirk, a citizen and resident of Indiana, William E. Badgett, a citizen and resident of Tennessee and Mrs. Helen F. Hubert, a citizen and resident of Indiana brought suit against the United States for a judgment or decree of the Court ordering defendant to turn over to plaintiffs Badgett and Hubert $6,999.63, six pieces of luggage, a diamond ring and a watch or in the alternative for damages for the value thereof. It was alleged that suit was brought under the Constitution, particularly Amendment 5. The items in question were taken from the possession of Van Buskirk by agents of the F.B.I. at the time of his arrest on January 27, 1961 for violation of Title 18 U.S.C. § 2314 and were turned over to Lindsay Deal, a United States Deputy Marshal. This arrest took place in Arkansas.

On April 4, 1961, Van Buskirk made a purported assignment of said property to Mr. Badgett, an attorney who represented him in criminal proceedings in the United States District Court in Knoxville, Tennessee and to Mrs. Hubert, who became surety on Van Buskirk's bond in connection with proceedings in the United States District Court in Little Rock, Arkansas and in Cleveland, Ohio.

Following the assignment but before suit was instituted, Mr. Badgett wrote the Department of Justice demanding the property and on August 24, 1961 received a letter from D. B. MacGuineas, Chief, General Litigation Section, declining to turn over the property at that time on the ground that its ownership had not been determined, and on the ground that the property may already have been assigned to an attorney in Little Rock and that it may indeed have not belonged to Van Buskirk at all because of fraud on his part in obtaining it.

On December 19, 1961, the defendant filed its motion to dismiss on the grounds: (1) that the complaint in violation of Rule 8(a) (1), 28 U.S.C. contained no jurisdictional statement, (2) that defendant had not waived its sovereign immunity to a suit of this nature, (3) that the Court lacked jurisdiction over the subject matter, (4) that the complaint failed to state a claim upon which relief could be granted, (5) that the purported assignment was void under the provisions of 31 U.S.C.A. § 203, (6) that venue was improper under 28 U.S.C. § 1402(a) (1) since two of the plaintiffs were non-residents of the Eastern District of Tennessee, and (7) that mandatory relief is not available against the United States.

Subsequently to the filing of the motion to dismiss, plaintiff amended their complaint by adding the following paragraph:

"This suit is also brought under the provisions of 28 USC 1356; 28 USC 1346(b); 28 USC 2674; and 28 USC 1346(a) (2)."

A motion to dismiss is determined upon the basis of allegations in the complaint and exhibits attached thereto. Mengel Co. v. Nashville Paper Prod. & Spec. Workers Union, 221 F.2d 644, 647 (C.A.6). The complaint states that agents of the F.B.I. took the property in question from plaintiff Van Buskirk at the time of his arrest. We accept this allegation at face value and assume that the arrest was lawful. And in view of the fact that his arrest was for a scheme to defraud, we assume also that the seizure of the property was a properly precautionary one in connection with the arrest although one of the conclusions in the complaint is that the taking constituted a conversion of the property. The property was later transferred to the Deputy United States Marshal who now holds it. The letter of D. B. MacGuineas of August 24, 1961 which was attached as an exhibit to the complaint asserts dominion over the property for the limited purpose of determining to whom it belongs. There was no inference in the

letter that the United States laid claim to any of it.

What we have in this case then is (1) a prayer that the property be turned over and (2) a claim against the United States for damages for property held by an employee of the United States to which neither he nor the Government lays claim.

Justice Brandeis pointed out in the case of Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 that the United States may not be sued without its consent, and that consent to sue the United States is a privilege accorded by it. The Government is under no obligation to accord a judicial remedy in respect to claims against itself, Thompson v. Whittier, 185 F.Supp. 306, 312 (D.C.D.C.) and can be sued only by its consent clearly given by legislative act. Bryan v. United States, 99 F.2d 549, 552 (C.A.10) Justice Brandeis further stated in the Lynch case that the character of the cause of action may be important in determining (as under the Tucker Act) whether consent to sue was given.

In their amendment to the complaint, plaintiffs list four statutes as supplying the basis for suit. We shall examine each of them. The first is 28 U.S.C. § 1356, which states:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction."

It is clear under the authority of such cases as Turton v. United States, 212 F.2d 354, 355 (C.A.6), Danning v. United States, 259 F.2d 305, 309 (C.A.9), and United States v. Sherwood, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058, that this statute is merely a general provision vesting in the district courts jurisdiction over certain types of actions. It does not contain a consent by the United States, express or implied, permitting the institution of this type of action against it. This statute contains no basis for any kind of suit against the United States.

Coming now to Section 1346(b), it reads in part as follows:

"(b) Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

It will be noted that it is made subject to the provisions of Chapter 171 which we shall come to in a moment.

The third section upon which plaintiffs rely is Section 2674 which is also a part of Chapter 171—"Tort Claims Procedure". The pertinent paragraph of Section 2674 is as follows:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

These two sections, 1346(b) and 2674, are made subject to Section 2680 of Title 28, the pertinent portions of which are as follows:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a dis-

cretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

\*   \*   \*   \*   \*   \*

"(c) Any claim arising in respect to the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer."

Each of these sections relates to *claims* made against the United States. Section 1346(b) expressly relates to "money damages". Although Section 2674 is not so explicit, it does relate to tort claims which are commonly for damages. Neither of these sections then authorizes a mandatory action against the United States for a judgment or decree directing the turning over of property.

Whether either authorizes actions for money damages against the United States for acts or omissions of its agents or officers we now consider. We cannot see the application of Section 1346(b) to the situation at hand. There is no allegation that the property is either injured or lost. It is simply being held under circumstances which we consider justifiable by reason of the charges pursuant to which Van Buskirk was arrested. Similarly Section 2674 relates to "tort claims".

Section 2680 comes into play with respect to both Section 1346(b) and Section 2674. As we read these sections together, we must conclude that the effect of Section 2680 is to withdraw the consent of the United Staes to be sued where the claim is based upon an act or omission of an employee of the Government exercising due care in the execution of a statute or regulation, or upon the detention of goods by a law-enforcement officer. Although plaintiffs argue with some plausibility to the contrary, we are of the opinion that subsection (c) is not confined to activities of Government officers in connection with taxes and customs duties. Jones v. Federal Bureau of Investigation, 139 F.Supp. 38, 42 (D.C.

Ind.); and Chambers v. United States, 107 F.Supp. 601, 602 (D.C.Kan.) In any event, on the facts alleged, we do not believe that a case is made out under either section, since the property hasn't been injured or lost in the one case, and since there has been no conversion or basis for a tort action against the United States in the other.

We come finally to Section 1346 (a) (2) which reads as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\*   \*   \*   \*   \*   \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Here again the statute is limited to claims for money and provides no basis for mandatory action.

As to the claim for money, we have not been pointed to the Act of Congress or regulation or to the basis for an express or implied contract or to the basis for liquidated or unliquidated damages upon which such a claim could be founded.

Reference is made by plaintiffs to United States v. Ferguson, 78 F. 103 (C. A.2). The difference between that case and this, and one that is fatal, we think, to the claims of plaintiffs here, is that in Ferguson, the Government actually assumed dominion over the $50.60 in question. The inspector who seized the money in the first place from the accused burglar transmitted that amount to the postmaster general on the assumption it was money taken from the post office when it was entered.

Liability in the Ferguson case did not turn, we think, simply upon the fact that the assignment was made before the

Government came into possession of the assigned property, but rather because in receiving and retaining the money it ratified the act of the officers and rendered itself liable to a proper assignee. As the Court said at page 105:

" * * * At the time when the order was given the inspector had no authority, under the laws of the United States, or no color of authority, to take into his possession and assume to retain money belonging to Atwood, even though Atwood had stolen an equivalent sum of government moneys from a post office. It is not pretended that any statute, or any regulation of the postmaster general made pursuant to a statute, could sanction a transaction of that kind. So long as the money was in the hands of the inspector, or of his superior officer, the postmaster general, there was no claim against the United States, and only one against the officers of the government, who had transcended their authority, and made themselves individually liable for the consequences. No claim accrued against the government until it ratified the acts of these officers by receiving and retaining the money which had been taken from Atwood. Until then, the government could have repudiated their acts, and there would not have been the slightest foundation for an action against it. The order given by Atwood to the plaintiff, being for money then in the adverse possession of another, was but a transfer of a chose in action. It, however, operated as an assignment of his cause of action for the recovery of the money. * * * "

Since the Government in our case had not ratified the action of the officers in seizing and retaining the money, in our opinion it could not possibly have rendered itself liable to any of the plaintiffs under the statutes relied upon. The claim, if any, lay against those officers who had seized or held the property and could be brought where they can be found. Mr. MacGuineas' letter indicated that others than these plaintiffs were laying claim to the property. If the suits are brought against the person holding the property, then by interpleader or consolidation all questions of ownership may be resolved in the same lawsuit. That this should prove an inconvenience to some plaintiffs is unfortunate, but it is one of the consequences of becoming involved with a sharp operator.

In bringing suit against the United States, plaintiffs here pursued a course contrary to that followed in Hildebrandt v. Harris, et al., 130 F.Supp. 1 (D.C.N.Y.) In that case, the accused brought suit against the F.B.I. agents who took the money in question, namely, $1,300.00, on the assumption that it was part of the proceeds of the holdup for which accused was convicted. By order of the District Court in Rhode Island this $1,300.00, together with some $35,000.00 which had been recovered directly from the accused, was paid over to the indemnity company which had insured the credit union involved in the theft. Plaintiff (accused) was not served with notice of the Rhode Island proceeding and claimed the $1,300.00 were not proceeds of the robbery and that defendants knew it. The Court said at page 2:

"That the plaintiff has been found guilty of a crime of violence does not deprive him of his constitutional right to due process. His property may not be taken from him in violation of his rights. While the surety company has a cause of action against the plaintiff for the loss it incurred in making payment under its policy, it can secure redress only by suit or other legal proceeding wherein the issue of the adverse claim of the plaintiff with respect to the $1,300 is adjudicated in accordance with procedural requirements. It cannot reimburse itself for any property claimed to belong to him without due process of law. See Ferguson v. United States, D.C.N.D. N.Y., 64 F. 88, affirmed [2 Cir.] 78 F. 103."

Whereupon it denied the defendant's motion for a summary judgment.

This Hildebrandt decision seems to chart the course in this troublesome case. If suit continues against the United States under any of the statutes relied upon, it could be saddled with liability for a sum it has never claimed, and could be subjected to suit wherever a claimant appeared. But on the postulate that the deputy marshal holds the money simply as bailee, suit should, we think, properly be brought against him in Arkansas where all claimants, including the three here, could have a hearing.

We think it is unnecessary to say anything more about the validity of the assignments, or about the question of venue.

The motion of the Government to dismiss is granted. Let an order be prepared in conformity with this memorandum.