Hugh Leroy **DUNBAR, Jr.,** a/k/a **H. L. Dunbar,** et al., Plaintiffs-Appellants,

v.

**UNITED STATES** of America et al., Defendants-Third Party Plaintiffs-Appellees,

J. Arthur **HAWKESWORTH, Jr.,** et al., Third Party Defendants-Appellees.

No. 73–3804.

United States Court of Appeals, Fifth Circuit.

Oct. 7, 1974.

Robert M. Bader, Miami, Fla., for plaintiffs-appellants.

Robert W. Rust, U. S. Atty., Mervyn L. Ames and Robert C. Byrne, Asst. U. S. Attys., Miami, Fla., for defendants-third party plaintiffs-appellees.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

This case comes to us primarily as a result of an unusual abuse of power by the federal officers involved. On May 17, 1973, Plaintiff-Appellant Hugh Leroy Dunbar, Jr., called a friend in Miami, Florida, one Ann Arzbecker, and informed her that he planned to send her a package within the next few days that he wished her to keep for him. On or about May 21, 1973, plaintiff placed a shoe box wrapped in a brown paper bag into the United States mails at Boston, Massachusetts, as first-class mail. Inside the package was $21,500 in cash; on the outside was the mailing address of Arzbecker's employers, a Miami law firm, and a return address: "H. Dunbar, Somerville, Massachusetts." Unfortunately, plaintiff neglected to include Arzbecker's name in the mailing address.

The package was delivered to the offices of Arzbecker's employers on May 22 and was opened in the presence of the senior member of the firm. A great commotion ensued, in the midst of which Arzbecker entered and informed her employer that she was the intended addressee. After some indecision, the lawyer met with a representative of the United States Attorney's office and informed that gentleman that it was his fondest wish to be rid of the $21,500 as soon as possible, as he had no claim to the money, and that if "H. Dunbar" appeared and satisfied the lawyer that he was the sender of the package, the money would be turned over to him. The United States Attorney, however, had a better idea—for the lawyer to turn the cash over to the Federal Bureau of Investigation [FBI]. The lawyer adopted this plan on May 23, receiving in return a "hold harmless" agreement.

The FBI immediately began an extensive investigation of the currency and of plaintiff, but found no evidence of criminal activity connected with either specie or sender, save the vague recollection of an unidentified Internal Revenue Service agent that someone named Hugh Dunbar had once been arrested in Vermont on a narcotics charge.

At this point, the ever-vigilant Internal Revenue Service [IRS] learned of the problem and gave notice of a jeopardy assessment of income tax against plaintiff, pursuant to 26 U.S.C. § 6851 in the amount of $5460.17. When a notice of levy was served upon the FBI agent in charge of the funds, the agent made no objection to the IRS action and

delivered said $5460.17 to a representative of the service on May 25, 1973.

When plaintiff's attorney asked the FBI to return the money to plaintiff, however, the Bureau made a very different response. It claimed that it was not at all certain that plaintiff was the "H. Dunbar" in question, or that plaintiff owned the cash. In order to ascertain the truth of the matter, therefore, the FBI demanded that plaintiff provide information as to the source and ownership of the cash.

This plaintiff declined to do. Instead, he filed a complaint against the Government in federal district court on June 12, seeking a writ of mandamus to compel the FBI and the IRS to return the money to him on the basis of certain postal regulations.[1]

In the course of civil discovery, the Government propounded interrogatories to plaintiff pursuant to Rule 33, Federal Rules of Civil Procedure, all of which plaintiff answered, except for the following:

"9. State the purpose and reasons for sending the package containing $21,500 in United States currency in the United States mails, as alleged in your complaint, from Boston, Massachusetts to Miami, Florida.

.    .    .    .    .    .

11. Describe in detail exactly how all of the United States currency, which is the subject of this action, was acquired by you. In further response to this interrogatory:

a. State the dates of acquisition

b. State the places of acquisition

c. State names and addresses of persons or parties from whom any of the above monies were acquired and respective amounts therefrom received."

To these questions plaintiff raised his Fifth Amendment privilege against self-incrimination, whereupon the United States filed a motion under Rule 37(a), Federal Rules of Civil Procedure, to compel answers to the questions. This motion was granted, in the form of an order requiring plaintiff to answer or suffer his complaint to be dismissed.

On September 14, 1973, pursuant to 28 U.S.C. § 2361 and Rules 14 and 22 of the Federal Rules of Civil Procedure, the United States filed a third-party complaint for interpleader against plaintiff, the law firm to which the package had been addressed, and "all absent, unknown persons having or claiming any right, title or interest in and to the subject matter funds." The Government disclaimed any right or interest in the money, but disputed plaintiff's claim and asked the court to determine which party had rightful possession and ownership of the fund. The law firm immediately denied any interest in the money; the "absent, unknown persons" made no reply.

When plaintiff persisted in his refusal to answer the disputed interrogatories, the United States filed a motion to dismiss the complaint for plaintiff's failure to comply with the previous court order compelling answers. The district court dismissed the complaint on October 5, 1973, pursuant to Rule 37(b) of the Federal Rules of Civil Procedure. Plaintiff appeals, arguing that the dismissal was improper because the disputed interrogatories were irrelevant to the issue raised by the complaint; plaintiff urges also that the Government has violated his Fourth and Fifth Amendment rights.

I.

■ Rule 37 of the Federal Rules of Civil Procedure provides various sanctions against parties who fail to make discovery. When a party has failed to comply with a court order compelling an answer to a particular interrogatory, Rule 37(b)(2)(C) empowers a court to dismiss an action brought by the disobedient party. Although such a sanction is obviously necessary to effectuate the

---

1. The action against the Internal Revenue Service was later dropped, so that the amount actually in controversy is $16,039.83.

discovery provisions of the Federal Rules, Rule 37(b) also provides that courts are to impose only such sanctions "as are just." *See* Bon Air Hotel, Inc. v. Time, Inc., 5th Cir., 1967, 376 F.2d 118. This admonition, and the drastic nature of an order dismissing the complaint without reaching the merits, have led the courts to employ the sanctions of Rule 37(b) only on the clearest showing that such an action is required. Anderson v. Nosser, 5 Cir., 1971, 438 F.2d 183, modified on other grounds, 1972, 456 F.2d 835, (en banc); Campbell v. Eastland, 5 Cir., 1962, 307 F.2d 478, cert. denied, 1963, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502. Finally, although the application of Rule 37 is fully within the discretion of the trial court, Diaz v. Southern Drilling Corp., 5 Cir., 1970, 427 F.2d 1118, cert. denied, Trefina A. G. v. United States, 1971, 400 U.S. 878, 91 S.Ct. 118, 28 L.Ed.2d 115, a court must be mindful of the demands of the Due Process Clause in its proceedings under the Rule. Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Brownell, 1958, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255.

In order to determine the propriety of a particular application of a Rule 37 sanction, we must examine the nature of the dispute that led to the Rule 37 disposition. If the disputed information was not properly discoverable, it follows that the district court should not have imposed a Rule 37 sanction upon plaintiff for refusal to reveal such information.

The Government instigated this Rule 37 controversy by propounding interrogatories to plaintiff under the rubric of Rule 33 of the Federal Rules of Civil Procedure. That Rule provides that interrogatories "may relate to any matters which can be inquired into under Rule 26(b)." Rule 26(b), in turn, enables parties to "obtain discovery regarding any matter, not privileged, which is rele-

vant to the subject matter involved in the pending action . . . ."

The question in this case, then, is whether the Government's interrogatories relating to the source and ownership of the cash were "relevant to the subject matter" of this lawsuit. We think that the questions were not relevant, and that the district court improperly dismissed plaintiff's complaint.

Plaintiff's action was brought under the auspices of 28 U.S.C. § 1361. The relief requested was a writ of mandamus to compel the FBI to perform a non-discretionary duty owed to plaintiff —to return the cash in question. Plaintiff alleges that this duty arises under the postal regulations, which provide that first-class mail must be returned to the sender when the "addressee has refused to accept mail" or when "it cannot be determined which of the disputing parties has better right to the mail." 39 C.F.R. § 159.2. Plaintiff contends that he was the sender, and that the addressee law firm refused the package, so that the right of plaintiff and the duty of the United States are clear under the regulation.

■■ Plaintiff has not alleged ownership of the money in his complaint, and he need not do so in order to substantiate his cause of action; it is enough to show that he was the sender of the package. A determination of ownership, therefore, is not relevant to the scope of the Government's duty under the regulation. Once that is said, it is not necessarily true that all questions regarding ownership would be irrelevant in all cases involving the regulation.[2] The United States Supreme Court has recognized that the discovery rules "are to be accorded a broad and liberal treatment," Hickman v. Taylor, 1947, 329 U.S. 495, 507–508, 67 S.Ct. 385, 392, 91 L.Ed. 451, 458, and discovery should be allowed if the information sought appears

---

**2.** It is perhaps worthy of note that even though a given piece of information may be "relevant" for the purposes of Rule 26(b), the less relevant that information becomes, the less appropriate a Rule 37 sanction is, where there is a failure or refusal to produce the information.

reasonably calculated to lead to the discovery of admissible evidence. Harrison v. Prather, 5th Cir., 1968, 404 F.2d 267; 8 C. Wright & A. Miller, Federal Practice and Procedure § 2008.

■ When we apply that standard to this case, however, it is apparent that the information requested by the United States was not sufficiently relevant to the subject matter of the action to come within the parameters of Rule 26(b). Not only is the question of ownership not necessary to a resolution of the plaintiff's complaint, but the Government has itself acted upon the assumption that plaintiff is the owner of the funds, in the matter of the IRS' termination assessment against plaintiff and subsequent levy against the disputed funds. It is not as if the money were contraband or evidence of a crime; the FBI's investigation has apparently exhausted those possibilities.

In another interrogatory to plaintiff, the Government asked for the names of any persons other than plaintiff "who have or may claim some right, title or interest" in the money. Plaintiff answered that there were no such persons. The disputed interrogatories, then, do not even bear directly on the question of ownership, as the Government insists, but on the source of plaintiff's money and the reason why he shipped it to Miami in a shoe box. While these questions might have interesting answers, they are not so germane to the conduct of the instant lawsuit that the plaintiff must answer them or face the sanctions of Rule 37.[3]

## II.

The foregoing discussion ought to be sufficient to clarify any confusion regarding the order of the district court from which this appeal was taken, and ordinarily we would end our sermon at this point. But the Government's resort in the district court to interpleader by anonymity requires some comment.

The third-party complaint of the United States sought to interplead three claimants or groups of claimants: 1) the plaintiff; 2) the addressee law firm; and 3) "all absent, unknown persons" having any right to the funds. The United States portrayed itself as a stakeholder whose only interests are seeing the funds safely conveyed to their owner or owners and avoiding multiple liability for a single sum of money.[4] At the time of the interpleader action, the plaintiff's claim to the fund was well-known to the United States. The United States also knew that the law firm had made and would make no claim to the money; after all, it was the firm's disavowal of any claim that led to the United States' position as stakeholder. Any lingering doubts on this account must have been laid to rest when the firm answered the interpleader complaint with a positive denial of any right, title or interest in the fund.

Assuming then, that the joinder by the United States of the law firm was nothing more than a charade, we are left with an interpleader action in which the United States is the stakeholder, and plaintiff and untold numbers of "absent, unknown persons" are the conflicting

---

3. Although our disposition of this appeal does not require us to inquire into the merits of plaintiff's complaint, the particular form and circumstances of the action, while unusual, are not unprecedented. *Cf.* United States v. Ferguson, 2 Cir., 1897, 78 F. 103; United States v. Reefer, W.D.Pa., 1965, 243 F.Supp. 110; Van Buskirk v. United States, E.D.Tenn., 1962, 206 F.Supp. 553, aff'd, 6 Cir., 304 F.2d 871; Jones v. Federal Bureau of Investigation, D.Md., 1956, 139 F.Supp. 38; Hildebrandt v. Harris, S.D.N.Y., 1955, 130 F.Supp. 1.

4. The United States' complaint cited both the Interpleader Act of 1936, 28 U.S.C. §§ 1335, 1397 and 2361, and Rule 22 of the Federal Rules of Civil Procedure as authority for granting the motion for interpleader. Although statutory interpleader and Rule 22 interpleader differ with respect to some questions of jurisdiction and venue, *see* 7 Wright & Miller, *supra* § 1703, those differences are of no moment for the purposes of this case.

claimants. To support this action, we are presented with a record in which the plaintiff has made a claim to the disputed fund that has been controverted only by doubts of the United States as to the authenticity of plaintiff's claim, doubts apparently innocent of any factual basis.[5]

■ In an interpleader action, the burden is on the party seeking interpleader to demonstrate that he is entitled to it. Although interpleader is available to a stakeholder even though no action has been brought against him nor any formal demand made upon him by some or all of the potential claimants, State Farm Fire & Casualty Co. v. Tashire, 1967, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270; Travelers Indemnity Co. v. Greyhound Lines, Inc., 5 Cir., 1967, 377 F.2d 325, cert. denied, 389 U. S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91, a prerequisite for the action is that the party requesting interpleader demonstrate that he has been or may be subjected to adverse claims. General Electric Credit Corp. v. Grubbs, 5 Cir., 1971, 447 F.2d 286, rev'd on other grounds, 1972, 405 U.S. 699, 92 S.Ct. 1344, 31 L. Ed.2d 612; Fulton v. Kaiser Steel Corp., 5 Cir., 1968, 397 F.2d 580.

■ The record in this case makes it painfully obvious that the United States has failed to demonstrate the existence of any colorable claim adverse to that of plaintiff. Quite apart from the possibility that the actions of the IRS and the FBI in the matter of the tax assessment and levy upon the fund might estop the United States from disputing plaintiff's claim thereto, Bierman v. Marcus, 3 Cir. 1957, 246 F.2d 200, cert. denied, 1958, 356 U.S. 933, 78 S.Ct. 774, 2 L.Ed.2d 762, the Government's contention that there may be some unnamed and unknown party or parties with a claim to the money is based upon little more than

factual arrogance on the part of the United States. Not only has no party come forward with such a claim, but the FBI has failed to ferret out any potential claimants and sans such ferreting we are at a loss to adopt its position. A tender solicitude that the currency be given to its rightful owner merits our respect, but cannot in itself furnish any justification for assuming that plaintiff is an interloper whose entitlement must be proved against the world.

This is not a mass tort suit in which the party requesting interpleader may not know the names of all potential claimants against the fund at the time of the complaint. In such an action, the interpleader plaintiff can at least limit the class of claimants to persons present in a given location at a given time, and from that delimitation determine more precisely the identities of the potential claimants. In such a case, the impleading of "absent, unknown persons," accompanied by public notice of the action, is perfectly reasonable and is the only way in which the interpleader remedy can be fully effectuated. This case, however, is an interpleading of all the world, or rather, because of jurisdictional problems, of all Americans. For all the United States has shown, each of us may have a claim to the disputed fund. The logical consequence of the United States' theory of action is that whenever the United States or any agency thereof comes into possession of property to which it makes no claim of ownership, it may retain that property regardless of the merit of any person's claims until a judgment in an action against all the world has rendered the United States immune to any possibility of multiple liability on property to which there has never been more than one claimant. To state that novel proposition is to render further condemnation of it unnecessary.

---

5. In connection with its interpleader action, the United States published a public notice to "all absent, unknown persons having or claiming any right, title or interest in and to" the disputed fund, to the effect that such parties must appear in the action or have a default judgment entered against them. In the event that this notice produces a claimant adverse to plaintiff, then the interpleader action may go forward.

We sometimes admire the zealotry of the FBI, but such zealotry carries no warrant for ignoring postal regulations and employing cosmic interpleader.

Because of our disposition of this case, we pretermit discussion of plaintiff's Fourth and Fifth Amendment claims.

The order of the district court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.