734 F.2d 944
 39 Fed.R.Serv.2d 378
 Jose A. FONSECA, Plaintiff-Appellant,
v.
Donald T. REGAN, Secretary of the Treasury of the United
States, et al., Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellee,
v.
UNITED STATES CURRENCY AMOUNTING TO the SUM OF TWO HUNDRED
FIFTY THOUSAND DOLLARS ($250,000.00) MORE OR LESS, Defendant,
and
Republic of Colombia and the State of New York, Defendants-Appellees,
and
Jose A. Fonseca, Defendant-Appellant.
 No. 670, Docket 83-6266.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 3, 1984.
Decided May 17, 1984.
 
 Edward S. Rudofsky, New York City (Zane and Rudofsky, New York City, of counsel), for plaintiff-appellant Fonseca.
 Beryl R. Jones, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for plaintiff-appellee United States.
 John Carey, New York City (Coudert Brothers, New York City, of counsel), for defendant-appellee Republic of Colombia.
 August L. Fietkau, Asst. Atty. Gen., New York (Robert Abrams, Atty. Gen., N.Y., Melvyn R. Leventhal, Deputy Asst. Atty. Gen., Richard Liskov, Asst. Atty. Gen., New York City, of counsel), for defendant-appellee State of New York.
 Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal involves plaintiff Jose A. Fonseca's five and one-half year struggle to recover a misdirected suitcase and its contents--$250,000--from the United States Government. Fonseca seeks relief from two judgments rendered against him in the United States District Court for the Eastern District of New York, 98 F.R.D. 694 (Costantino, J.), the first dismissing with prejudice his claim for mandamus relief under 28 U.S.C. Sec. 1361 and the second disposing of his interpleader claim in the same fashion. In essence, these judgments hold Fonseca in default for failing to respond to interrogatories and document requests and neglecting to appear at a scheduled deposition.
 
 
 2
 We reverse and remand, directing the district court to reinstate Fonseca's complaint and dismiss the government's interpleader action.
 
 I. BACKGROUND
 
 3
 On June 9, 1978 Fonseca purchased a ticket to fly from Bogota, Colombia to Lima, Peru on Avianca Airlines. Upon arrival at the Bogota airport, plaintiff checked his suitcase through to Lima and obtained the customary baggage claim check. When Fonseca arrived in Lima his suitcase was missing. Avianca had apparently misdirected it to the Pan American Airlines terminal at John F. Kennedy International Airport in New York. When the suitcase was not claimed there, United States Customs officials at JFK seized it, and upon opening it discovered $250,000 in U.S. currency packed inside.
 
 
 4
 Fonseca eventually discovered his suitcase's whereabouts and, acting through a New York attorney, requested that the Customs Service return it to him. When this request was denied, Fonseca commenced an action in the district court to compel the money's return. He also retained the services of the Wolf D. Barth Company ("Barth"), licensed customs brokers. Barth prepared and filed with the Customs Service all of the papers and documents, including a bond and carrier certificate, necessary to obtain release of the currency. Normally, Customs would have approved the application and released the currency as a routine matter, but in this case, at the behest of the Regional Counsel's Office, they refused to do so. The refusal touched off the following series of events.
 
 
 5
 On December 12, 1978 Fonseca filed an amended complaint that alleged compliance with the customs requirements of 19 C.F.R. Secs. 141 and 143 and sought mandamus relief pursuant to 28 U.S.C. Sec. 1361. The United States responded by serving interrogatories on Fonseca through his local counsel. At that point Fonseca moved to obtain an order directing immediate return of the suitcase and its contents. Meanwhile, the Superintendent of Exchange Control of the Republic of Colombia requested that the money be delivered to him in connection with an investigation his office was conducting to determine whether Fonseca had violated Colombian laws governing currency exchange control. Acting on this request, the United States Attorney applied for a court order directing delivery of the currency to the Columbian Superintendent pursuant to 28 U.S.C. Sec. 1782. At an evidentiary hearing held in connection with these motions, the district court held that the Superintendent was a "tribunal" within the meaning of Sec. 1782, ordered delivery of the money to the Superintendent and then proceeded to dismiss Fonseca's complaint. On appeal we held to the contrary, finding that the Superintendent was not a tribunal but only a law enforcement official. Accordingly, we reversed the order below and reinstated Fonseca's complaint. Fonseca v. Blumenthal, 620 F.2d 322, 323-24 (2d Cir.1980) (per curiam).
 
 
 6
 Before the district court could decide the case on remand, the United States filed a second action, in interpleader, see 28 U.S.C. Sec. 1335, to determine the owner of the suitcase and money. Fonseca, the Republic of Colombia and the State of New York filed claims to the money. Then, the government served a second set of interrogatories on Fonseca inquiring as to his past and present addresses, past and present identification and travel documents and the nature of his employment. Plaintiff objected to these interrogatories, claiming that the questions were irrelevant. On February 4, 1982 the district court ordered Fonseca to answer the interrogatories, yet plaintiff refused to comply.
 
 
 7
 Colombia, having previously filed a claim to the money, joined the legal controversy on April 14, 1982 when its attorneys served Fonseca's local counsel with interrogatories and a request for documents respecting the interpleader action. Later, Colombia supplemented these efforts with another request for documents and a notice of deposition to take place in New York on June 28, 1982. The information sought encompassed all of the topics covered by the United States' interrogatories as well as additional ones relating to the source, ownership and manner of Fonseca's obtaining the currency, the purpose and particulars of transporting the currency into and out of Colombia and Fonseca's noncompliance with Colombia's currency control laws. The plaintiff did not appear for the deposition, nor did he supply the requested documents; and, although he filed answers to the interrogatories on July 6, Colombia asserted that he answered improperly. Thus, Colombia moved pursuant to Fed.R.Civ.P. 37(d) for an order to strike Fonseca's pleadings and pursuant to Fed.R.Civ.P. 34(b) and 37(a) to compel document inspection or to direct a deposition within 60 days, compel document production and compel proper answers to interrogatories.
 
 
 8
 The district court granted this motion and directed Fonseca to appear in New York for a deposition on October 5. Fonseca refused to comply. Instead, he claimed that he might be a target of criminal investigations both here and in Colombia and could invoke his Fifth Amendment privilege as a ground for refusing to answer these interrogatories. A week later Colombia again moved, this time for an order to strike Fonseca's pleadings and for default judgment against him. The United States and New York State joined in the motion, and on November 10 the district court heard another round of oral arguments. In a written decision and order, Judge Costantino found no valid excuse for Fonseca's failure to comply with his earlier orders regarding the deposition, interrogatories and document production. Therefore, on account of Fonseca's defaults, the trial court dismissed Fonseca's claim for mandamus relief as well as his interpleader claim.
 
 
 9
 On appeal, Fonseca argues as he did before the district court that the crucial issue in this case is not his "ownership" of the suitcase and its contents, but rather his right to the return of the property. Thus, he continues, discovery motions going to the issue of ownership should have been deemed irrelevant. Fonseca further contends that he has a right to the suitcase and its contents because he holds the baggage claim check and has otherwise completely complied with applicable Customs regulations. Finding considerable merit to these arguments, we reverse the judgments of the district court and remand with instructions to it to reinstate Fonseca's complaint and dismiss the government's interpleader action.
 
 II. ANALYSIS
 
 10
 Rule 37 of the Federal Rules of Civil Procedure provides generally for sanctions against parties who unjustifiably resist discovery, the most severe of which are dismissal and judgment by default pursuant to Rule 37(b)(2)(C). District courts have broad discretion to invoke these sanctions, see, e.g., Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir.1974), and the scope of appellate review is focused on whether the trial court managed its affairs within the permissible range of its discretion, Link v. Wabash Railroad Co., 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962), in light of the entire record in the case. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam ). Here, where the information sought is not properly discoverable, it is axiomatic that a district court should not impose a Rule 37 sanction for a party's failure to comply with an order to reveal such information.
 
 
 11
 The basic rule governing the permissible scope of discovery, Fed.R.Civ.P. 26(b), provides in pertinent part that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ...." Thus, the crucial issue in this case is whether the interrogatories, documents sought and likely topics at deposition were "relevant to the subject matter involved"--i.e., Fonseca's right to the return of the currency.
 
 
 12
 Although we have had little occasion to write on this point, the Fifth Circuit's opinion in Dunbar v. United States, 502 F.2d 506 (5th Cir.1974), is particularly instructive. In that case claimant Dunbar sent a package to a friend through the United States mails. Inside the package was $21,500 in cash. On the outside was written the mailing address of the law firm at which Dunbar's friend worked. Although Dunbar included his own name and return address and his friend's mailing address, he neglected to include his friend's name on the outside of the package. When the package arrived at the law firm, a senior partner, unapprised of the intended recipient, opened it and discovered the money. Dunbar's friend subsequently informed the partner that she was the intended addressee, but he refused to give her the cash and instead contacted the United States Attorney's Office. That Office persuaded the lawyer to turn the package over to the Federal Bureau of Investigation which, upon receipt of the package, undertook an investigation of Dunbar.
 
 
 13
 Even though the FBI found no evidence of criminal activity, it refused to return the package to Dunbar despite his entreaties and the clearly marked return address. Dunbar, therefore, relying on certain postal regulations, filed a complaint against the government in which he sought a writ of mandamus to compel return of the money. Claiming that it was uncertain whether plaintiff owned the cash or even that he was the "Dunbar" in question, the government served him with interrogatories pursuant to Fed.R.Civ.P. 33. Dunbar responded to most of the interrogatories but refused to answer two that dealt with the purposes for sending the package and the specifics surrounding acquisition of the money. Upon motion, the district court ordered Dunbar to answer the interrogatories or have his claim dismissed. When the government later filed an interpleader action against all parties with possible claims to the package and Dunbar persisted in refusing to answer the interrogatories, the district court dismissed his claim under Rule 37 and entered a default judgment.
 
 
 14
 On appeal, the Fifth Circuit reversed the district court, reinstated Dunbar's complaint and dismissed the interpleader action. The court rejected the government's argument that ownership of the package was crucial and that the interrogatories pertaining to ownership were relevant. Dunbar, supra, 502 F.2d at 509-10. Instead, it concluded that under the applicable postal regulations, which required return of the package to its sender, Dunbar need show only that he was the sender, not the owner. Id. at 509. Finally, the court warned against the government's use of "cosmic interpleader," especially where it failed to demonstrate the existence of any colorable claim adverse to that of the plaintiff. Id. at 511-12.
 
 
 15
 Apart from the different settings, we see little to distinguish Dunbar from the present case. Appellees contend that their interrogatories and other discovery devices are relevant because they go to the issue of ownership, which they believe is critical to a determination of Fonseca's claim, and that there is some doubt as to whether Fonseca actually owns the currency. In particular, they argue that the existence of another "Jose Fonseca" with the same Colombian identification number as plaintiff somehow precludes plaintiff's recovery.
 
 
 16
 This line of reasoning, quite similar to the one advanced and ultimately rejected in Dunbar, entirely misses the point. Ownership of the currency is not the issue in this case. Thus Fonseca may not be required to allege ownership in his complaint or prove it in an interpleader action. See Dunbar, supra, 502 F.2d at 509. The real matter at issue in this case is Fonseca's right to possession (i.e., return of the currency). From the pleadings, affidavits and exhibits, it is undisputed that Fonseca holds the baggage claim check corresponding to the number originally assigned to the suitcase, has given an accurate description of the suitcase and its contents, and has entered and filed the necessary customs documents pursuant to 19 C.F.R. Secs. 141 and 143. These particulars abundantly demonstrate Fonseca's right to possession.
 
 
 17
 Under general principles of law--just as under the established customs of the railroad and airline industries--the holder of a baggage claim check is ordinarily entitled to the return of the checked baggage. See, e.g., Isaacson v. New York Central & Hudson River Railroad Co., 94 N.Y. 278, 282-84 (1884); Cohen v. Varig Airlines, S.A., 85 Misc.2d 653, 655-57, 380 N.Y.S.2d 450 (N.Y.Civ.Ct.1975), modified on other grounds, 88 Misc.2d 998, 390 N.Y.S.2d 515 (Sup.Ct., App.Term 1976), modified on other grounds, 62 A.D.2d 324, 405 N.Y.S.2d 44 (1st Dept.1978). Put another way, the fact of the loss of the luggage in transit does not affect the claim check holder's power to reclaim it, United States v. Williams, 503 F.2d 50, 53 (6th Cir.1974), since control of the baggage claim ticket constitutes constructive possession of the baggage. See United States v. Jackson, 588 F.2d 1046, 1057 (5th Cir.), cert. denied, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); United States v. Catano, 553 F.2d 497, 500 n. 3 (5th Cir.1977); United States v. Ogden, 484 F.2d 1274, 1274-75 (9th Cir.1973), cert. denied, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974); United States v. Pardo-Bolland, 348 F.2d 316, 324 (2d Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 388, 15 L.Ed.2d 353 (1965); United States v. Madalone, 492 F.Supp. 916, 919 (S.D.Fla.1980); State v. Carroll, 111 Ariz. 216, 526 P.2d 1238, 1240 (1974) (en banc); State v. Trowbridge, 157 Mont. 527, 487 P.2d 530 (1971); State v. Mejia, 257 La. 310, 242 So.2d 525, 531 (1970). From this it appears beyond doubt that when Fonseca presented his baggage claim check and accurately described the suitcase and its contents, he had a right to expect that the suitcase would be immediately returned to him.
 
 
 18
 Appellees further argument, seeking to cast doubt on Fonseca's identity by contending that there exists another "Jose Fonseca," is simply clutching at straws. Even were it true, this revelation neither defeats Fonseca's claim nor makes relevant appellees' discovery. Somewhere in Colombia another Jose Fonseca may well exist, but only the one now before us has laid claim to the currency and proffered the baggage claim check. The sum at stake--$250,000--is sufficiently large that one might fairly wonder why during the past six years this other Jose Fonseca has not asserted his own claim. Silence from that quarter speaks louder than appellees' argument.
 
 
 19
 Moreover, the United States Government need not fear that by releasing the currency it subjects itself to liability for misdelivery. Fonseca retained a licensed customs broker that on his behalf filed with the Customs Service all the requisite papers and documents, including a bond. These measures should adequately protect the United States against unforeseen liability--liability that in any event appears baseless. In fact, Fonseca's compliance with 19 C.F.R. Secs. 141 and 143 substantiates his right to possession of the suitcase. Just as the postal service normally returns unaddressed packages to their senders, Customs normally approves applications like Fonseca's as a matter of course.
 
 
 20
 Finally, we find that the information requested by appellees is not sufficiently relevant to the subject matter of the action to fall within the parameters of Fed.R.Civ.P. 26(b). A determination of "ownership" of the currency is not necessary to a proper resolution of the dispute. Further, the sought after discovery would not shed new light on the question of Fonseca's right to possession. The proposed interrogatories, for example, inquired into Fonseca's past and present addresses, his identification documents, the nature of his employment and the circumstances surrounding his acquisition of the money. As the Fifth Circuit commented in Dunbar, supra, 502 F.2d at 510, appellees' interrogatories "might have interesting answers, [but] they are not so germane to the conduct of the instant lawsuit that the plaintiff must answer them or face the sanctions of Rule 37."
 
 III. CONCLUSION
 
 21
 We believe the government's conduct in this case is wholly unjustified since it initiated its interpleader action on a wrong legal premise and wrongly instituted it against a legitimate claimant. This becomes even clearer in light of the concession that the amount of money found in the suitcase is irrelevant to the government's authority to seize it. That is to say, the government suggests that it may capriciously seize a misdirected suitcase--whether it contains $250,000, $25 or merely clothing--refuse to return it to a party claiming rightful possession and then compel that party to undergo the burden of costly litigation and unwarranted discovery.
 
 
 22
 The United States and the State of New York have failed to demonstrate any colorable claim adverse to that of Fonseca, or even the presence of a legitimate individual claimant. Since the suitcase arrived in this country fortuitously, either of these claimants would be unjustly enriched if they could successfully lay claim to a portion of the $250,000. Colombia's case is similarly suspect. Although the Colombian Government may have a valid action against Fonseca for exporting currency in violation of its currency exchange control laws, it may not seek to develop the facts it needs to prove its case by use of discovery in the Courts of the United States. Instead, it should seek whatever redress it believes appropriate in the proper forum, once the money is returned to Fonseca.
 
 
 23
 Rather than chide appellees further for what we perceive to be abuses of their authority and of the judicial process, we think it should suffice to warn once again against the misapplication of interpleader and irrelevant discovery. Since there is no merit to appellees' remaining arguments, the order of the district court is reversed and the case remanded for further proceedings consistent with this opinion.