611 F.Supp. 1290 (1985)
In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.
Gerald HOGAN, M.D., Plaintiff,
v.
DOW CHEMICAL CO., et al., Defendants.
MDL No. 381, CV-81-991.
United States District Court, E.D. New York.
May 10, 1985.
*1291 Robert C. Taylor, Jr., Ashcraft & Gerel, Washington, D.C., for plaintiff.
Leonard Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., Philip Pakula, Townley & Updike, Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, William Krohley, Kelley, Drye & Warren, Thomas Beck, Arthur, Dry & Kalish, David R. Ross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, New York City, Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., Henry G. Miller, Clark, Gagliardi & Miller, White Plains, N.Y., for defendants; Bruce Hecker, Shea & Gould, New York City, of counsel.
Arvin Maskin, Dept. of Justice, Washington, D.C., for third-party defendant United States.

MEMORANDUM, ORDER, and JUDGMENT
WEINSTEIN, Chief Judge:
Defendants, seven chemical companies who manufactured the herbicide Agent Orange, have moved to dismiss Dr. Gerald Hogan's claims or in the alternative for summary judgment. Fed.R.Civ.P. 12(b), 56(b). They also seek dismissal for failure to comply with a discovery order. Fed.R. Civ.P. 37(b) and (d). Plaintiff opposes these motions and urges that diversity of citizenship did not exist at the time the suit was brought, making removal to federal court improper.
As indicated below, removal was proper. Plaintiff's willful failure to comply with a discovery order and his failure to produce any evidence sufficient to show a causal connection between his injuries and exposure to Agent Orange require dismissal.

*1292 I. FACTS
Hogan is a medical doctor who worked as a civilian contract physician for the United States Agency for International Development in a hospital in Vietnam in 1966. He was in Vietnam for no more than four months. During the first month he worked in a surgical and medical hospital located in the center of the City of Da Nang. He left the city only once during that month to visit a Special Forces camp 75 miles southwest of the city. The rest of his time in Vietnam he was a hospital patient.
Hogan claims that during that first month he was exposed to Agent Orange because of his physical contact with Vietnamese who had been exposed to Agent Orange and because dioxin was in Da Nang dust. He was diagnosed in Vietnam as having had an allergic reaction to penicillin or other allergens, an allergy which plaintiff was known to have had prior to his arrival in that country.
Upon his return from Vietnam, plaintiff was found to have allergic reactions to house dust, airborne molds, grasses, ragweed, cattle and dog hair, feathers, wool, silk, chocolate, and cola. He resumed his medical practice in cardiovascular surgery at Georgetown University in 1967, but left this position in 1971 due to declining health.
Currently, plaintiff claims that the following diseases and symptoms over the last 18 years result from his exposure to Agent Orange: elevated triglicerides; elevated SGOT; elevated total Bilirubin; elevated C4 (B1-E-Globulin); immune deficiency; environmentally triggered vasculitis; hemi Parkinson's disease; acne-like rash of the premalar area; weakness in extremities (possible peripheral neuropathy); hypoactive reflexes (possible peripheral neuropathy); chest pains; palpitations; and arrythmia.
The skin rashes, progressive vasculitis, and general deterioration of neurological functions were identified in 1975. The remaining illnesses were diagnosed in 1978 and subsequently.

II. PROCEDURAL HISTORY
On January 29, 1981, plaintiff sued the chemical companies in the Second Judicial District Court of Nevada. He charged that the defendants knew of the danger of contact with Agent Orange and failed to warn him.
In February 1981, defendants removed the suit to federal court based on diversity of citizenship. 28 U.S.C. §§ 1332 and 1441. Plaintiff did not challenge the removal. Once in federal court, the action was transferred to this court as part of the "Agent Orange" product liability litigation, MDL 381.
In August 1984, defendants moved to dismiss or, in the alternative, for summary judgment. Plaintiff did not reply and defendants obtained a default judgment. Plaintiff's Rule 60 motion to reopen was granted and defendants renewed their motions.

III. LAW

A. Jurisdiction

Responding to defendants' motion to dismiss or for summary judgment plaintiff suggests that no diversity exists. He states that since 1979 he has spent time in California, Hawaii, Mexico, Texas, Florida, and the Bahamas as well as in Nevada. It is to this jurisdictional issue that we first turn. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-84, 56 S.Ct. 780, 782-83, 80 L.Ed. 1135 (1936).
A statement of residence says little about domicile; it only declares where a party is living. John Birch Society v. National Broadcasting Co., 377 F.2d 194, 199 (2d Cir.1967). To change domicile, a person must take up residence in a different place with the intent of remaining there. Mas v. Perry, 489 F.2d 1396, 1399-1400 (5th Cir.), cert. denied, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).
Diversity at the time suit was brought provides sufficient predicate for jurisdiction. Stevens v. Nichols, 130 U.S. 230, 231, 9 S.Ct. 518, 519, 32 L.Ed. 914 (1889). Jurisdiction having once been vested, it is not divested by a later change of *1293 domicile. Dery v. Wyer, 265 F.2d 804, 808 (2d Cir.1959).
Since plaintiff has never claimed a domicile other than Nevada, he is a citizen of Nevada. All the evidence supports that conclusion. In his Rule 60 motion plaintiff's affidavit refers to Nevada as his "home state" when he brought suit. See Sun Printing and Publishing Association v. Edwards, 194 U.S. 377, 382, 24 S.Ct. 696, 697, 48 L.Ed. 1027 (1904). In their removal papers, defendants asserted that plaintiff was a citizen of Nevada and plaintiff failed to deny or to challenge removal; failure to object at that time can be taken as an admission. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97-98, 42 S.Ct. 35, 37-38, 66 L.Ed. 144 (1921). Even now, his home appears to be in Nevada for that is where he repaired to give his deposition. The court has diversity jurisdiction.

B. Rule 37 Motion to Dismiss

Pursuant to the Magistrate's Pretrial Order Number 36, defendants began what was to have been two days deposing plaintiff in his home in Las Vegas on March 21, 1985. The deposition began in the morning and lasted until noon. After lunch, plaintiff's attorney informed defendants' counsel that plaintiff was not able to continue with the deposition. Plaintiff claimed to be suffering from cardiac arrhythmia resulting from atmospheric conditions. There was no claim in the record of fatigue or mental confusion.
The following day, plaintiff refused to continue and suggested that he was considering discontinuing the suit. On March 27, the issue of the suspended deposition was raised with the Magistrate by telephone. At that time plaintiff declared that he would continue the suit but he sought an indefinite suspension of the deposition because of ill health. In support of his contention he submitted an affidavit of Dr. William Rea, a Dallas physician. Based on a telephone call from plaintiff in Las Vegas to Dr. Rea in his Texas office, Dr. Rea concurred in plaintiff's self-diagnosis that plaintiff was suffering from cardiac arrhythmia, fatigue and mental confusion resulting from the stress of the deposition.
Defendants objected to plaintiff's request, arguing that the telephonic diagnosis without any tests or physical examination was insufficient. The Magistrate ordered an independent examination. It was conducted on April 1, 1985 by Dr. Samuel Spagnolo, the Director of the Division of Pulmonary Disease and Allergy and Professor of Medicine at George Washington University School of Medicine.
Dr. Spagnolo found plaintiff's electrocardiogram normal and discovered no undue fatigue or mental confusion. On April 2, in a telephone conference with all parties and the Magistrate, plaintiff offered no additional evidence in support of his request for an indefinite suspension of his deposition. Finding that plaintiff had not sustained his burden, the Magistrate ordered the deposition to continue, but reduced it to one day's duration. In consideration of plaintiff's allergies, the Magistrate suggested that the deposition be held in a hospital on April 4. Speed was essential since a final argument on the long-pending motion for summary judgment had been scheduled for April 15.
On April 3, plaintiff's counsel informed the Magistrate that plaintiff refused to abide by the discovery order because he felt physically unable to do so. He did not wish to voluntarily dismiss the suit but he was aware of the potential consequences of his refusal to obey the Magistrate's order. Plaintiff claimed that Dr. Spagnolo's report was inaccurate and that he suffered from cardiac arrhythmia during the examination and continued to do so.
Defendants moved to have the claim dismissed. Fed.R.Civ.P. 37(b)(2). A hearing on this motion was held on April 15 by the court. There was no indication at the argument that plaintiff intended at any time to comply with the Magistrate's order.
Rule 37(b)(2) permits a wide panoply of sanctions against a party who fails to obey a discovery order. It provides in relevant part that:

*1294 If a party * * * fails to obey an order to provide or permit discovery * * * the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
* * * * * *
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party * * *.
(Emphasis supplied.)
The strength of any sanction under the Rule must be proportionate to the degree and effect of a party's defiance of the discovery process and orders of the court. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). While courts are reluctant to do so, in extreme cases they have an obligation to apply the ultimate sanction of dismissal. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); Societe Internationale Pour Participations Industrielles et Commerciales, S.A., 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); Paine, Webber, Jackson & Curtis, Inc. v. Inmobiliaria Melia de Puerto Rico, Inc., 543 F.2d 3 (2d Cir.1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1178, 51 L.Ed.2d 583 (1977); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir.1974). Dismissal is particularly appropriate when, despite a clear warning, a party willfully disobeys a court order. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); see also Note, "The Emerging Deterrence Question in the Imposition of Discovery Sanctions," 91 Harv.L.Rev. 1033, 1048-50 (1978).
Failure to cooperate in discovery is particularly objectionable when there is a substantial doubt about whether there are facts sufficient to support a claim. Fonseca v. Regan, 734 F.2d 944 (2d Cir.), cert. denied, ___ U.S. ___, 105 S.Ct. 249, 83 L.Ed.2d 186 (1984); Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 614 (2d Cir. 1964), cert. dismissed, 380 U.S. 249, 85 S.Ct. 934, 13 L.Ed.2d 818 (1965). The plaintiff, having placed the origin of his illness in issue, may not now refuse to cooperate with defendants in discovery concerning the crucial question of causation. A willful failure to comply with the court's order may be taken as an admission that plaintiff's claims lack merit. Hammond Packing Co. v. State of Arkansas, 212 U.S. 322, 351, 29 S.Ct. 370, 380, 53 L.Ed. 530 (1909).
The very nature of plaintiff's medical history creates a serious question with respect to any causal connection between Agent Orange and his physical condition. See, e.g., discussion of lack of causation in In re "Agent Orange" Product Liability Litigation, 611 F.Supp. 1223, 1260-63 (E.D.N.Y. 1985) dismissal of claims of veterans who opted out of class). Given those initial doubts, plaintiff's refusal to comply with the reasonable orders of the Magistrate constitutes a gross form of spoliation, warranting an inference of lack of substance to the claim.
Plaintiff contends that his failure to obey is not willful but instead results from his poor health and therefore does not warrant a severe sanction. Societe Internationale Pour Participations Industrielles et Commerciales, S.A., 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958); Flaks v. Koegel, 504 F.2d 702, 708-09 (2d Cir.1974). He has failed, however, to produce any believable evidence or raise any serious issue regarding Dr. Spagnolo's diagnosis and examination. The court concurs with the Magistrate's finding that the plaintiff's claim of ill health is untrue and is an excuse to prevent being embarrassed by a searching deposition. See Weisberg v. Webster, 749 F.2d 864, 871 (D.C.Cir.1984). Plaintiff failed to offer any credible support for his argument when he had the opportunity before the Magistrate and this court. Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1127 n. 4 (5th Cir.), cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 *1295 L.Ed.2d 115 (1970); Mohamed v. American Export Lines, 94 F.R.D. 327 (E.D.N.Y. 1982).
Ordinarily a single pretrial violation would not warrant dismissal. United States Freight Co. v. Penn Central Transportation Co., 716 F.2d 954 (2d Cir.1983). When, however, a party able to comply with a magistrate's order compelling discovery of an essential matter in his complaint fails to do so while understanding the full range of sanctions that may be marshalled against him, the court has little option but to dismiss his suit to safeguard the discovery process and the rights of other parties to the suit. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2d Cir.1979). Plaintiff's obstinacy prejudices defendants by foreclosing them from discovering further information as a basis for their motion for summary judgment.
This court relies on the power of its Magistrates to control discovery informally with the cooperation of counsel and parties. See United States District Court for the Eastern District of New York, Standing Orders of the Court on Effective Discovery in Civil Cases passim (effective March 1, 1984); Revised Report of the Special Committee on Effective Discovery in Civil Cases for the Eastern District of New York (Wesely Committee), id. at 19 ff. The policy of the court, following the Wesely Committee and the bar's recommendations, is to use sanctions sparingly. Id. at 51-54. Yet ignoring a party's blatant attempt to frustrate discovery would weaken the system, denigrating the cooperative and forthcoming spirit among litigants that the Standing Orders are designed to encourage and foster. Here the Magistrate did everything possible to obtain compliance with the Federal Rules of Civil Procedure and this court's Standing Orders, using the telephone conferencing methods the court encourages. Id. passim. The extreme sanction of dismissal must be applied.

C. Summary Judgment

Defendants have also moved to dismiss or for summary judgment on the grounds that plaintiff has failed to show (1) that he was ever exposed to Agent Orange, and (2) that Agent Orange caused the illnesses from which he is allegedly suffering. The legal standards governing these issues have already been described. In re "Agent Orange" Product Liability Litigation, 611 F.Supp. 1223 (E.D.N.Y. May 8, 1985). The facts in the instant case provide no basis for a finding of causality.
Even accepting Dr. Hogan's rather bizarre theory that he was exposed to Agent Orange through city dust and contact with his patients, there is no proof that the diseases and symptoms suffered by him were caused by Agent Orange.
The court has taken judicial notice of the dispositive nature of the epidemiological studies on the issue of lack of causation. See In re "Agent Orange" Product Liability Litigation, 611 F.Supp. 1223 (E.D.N.Y. May 8, 1985). Defendants add support to this evidence with the testimony of three specialists, each of whom flatly denies any causation. Plaintiff's experts are equivocal, one of them referring to plaintiff's diseases as presenting a "mystery." None of plaintiff's experts show familiarity with the critical studies of Agent Orange. Plaintiff's expert testimony provides no basis upon which a trier of fact could rationally conclude that plaintiff's alleged injuries were more likely than not caused by Agent Orange. They would be excluded. Id.

IV. CONCLUSION
Were the case not dismissed under Rule 37, it would have to be dismissed under Rule 56. Dr. Hogan's claims are dismissed. This opinion constitutes a final judgment.
SO ORDERED.