[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 21, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12673

_____

D.C. Docket No. 03-23101-CV-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NINE HUNDRED SIXTY THOUSAND
DOLLARS IN U.S. CURRENCY,

Defendant,

JESUS SANTOS MARTINEZ,

Claimant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(November 21, 2006)**

Before TJOFLAT and CARNES, Circuit Judges, and HODGES,[*] District Judge.

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

HODGES, District Judge:

This is a civil forfeiture proceeding. The district court entered partial summary judgment finding that probable cause existed to forfeit $960,000 in U.S. currency; and then, after a bench trial, the court further held that the Claimant, Jesus Santos Martinez, had not proved his claim of ownership. Martinez appeals. We affirm.

**Facts and Background**

The material facts are undisputed. On June 23, 2003, a carton was placed with Pack Mail de Occidentes, R.L. Dec. V. ("Pack Mail"), a shipping company located in Mexico. The shipper was identified in the accompanying papers as Francisco J. Rubalcaba Ortiz. The shipping label on the carton was addressed to Representaciones C.A.C. Cia Ltda ("Representaciones"), for delivery in Colombia. The invoice prepared for the carton described the contents as "one hydro pneumatic pump" valued at $520. Pack Mail entrusted the carton to Cargomundo Internacional Rosa, S.A. de C.V. (Cargomundo), located in Mexico, and Cargomundo loaded the carton onto a plane bound from Mexico to Miami International Airport. At Miami International Airport, the carton was off-loaded to await transport to Colombia on a plane scheduled for departure several days later.

Based on a review of the cargo manifest from the flight carrying the carton into the United States, a U.S. Customs inspector chose to inspect the item while it was

2

located at Miami International Airport. The carton contained what appeared to be a water tank with a compressor welded to it. A closer inspection, which included cutting into the "hydro pneumatic pump," revealed the defendant currency in the amount of $960,000. The currency was not noted anywhere on the Air Waybill accompanying the carton. U.S. Customs then seized the currency and notice of the seizure was sent to the consignee (Representaciones), the shipping agent (Pack Mail) and to the shipper (Rubalcaba).

In November 2003, the Government filed a verified complaint for forfeiture in rem against the currency. Shortly thereafter, although his name was not mentioned in any of the relevant papers, Martinez filed a verified claim seeking possession of the currency. He also filed a Rule 12(b)(6) motion to dismiss the Government's complaint. The Government responded by filing a motion to show cause and a request for an evidentiary hearing challenging Martinez' standing to contest the forfeiture. Martinez then submitted the declaration of Carlos Alberto Cardenas Ibarra, who purported to speak for Representaciones. The district court, however, granted in part the Government's motion, and directed Martinez to "amend his claim by providing more detailed affidavits, along with any necessary supporting documentation, regarding his ownership interest of Defendant property."

Martinez complied by filing an Amended Verified Claim, alleging that: (1) he

is the owner of the $960,000; (2) the property seized represents revenues from his business in the marble trade; (3) the name of his marble company is Retalmar; (4) his company conducts business throughout Latin America, including Mexico, C.A., the country of origin of the seized currency that was being sent to him via Representaciones; and (5) in Latin America, it is customary to deal in U.S. currency due to the instability of the local currencies and distrust of local financial institutions. Martinez also attached an amended affidavit of Mr. Ibarra, who identified himself as the president of Representaciones. Mr. Ibarra stated that when the carton was shipped from Mexico, Representaciones was notified that Martinez was the owner of the carton. Further, the responsible person at Representaciones knew to contact Martinez when the carton arrived. Mr. Ibarra also stated that it was customary for the owner of merchandise to be contacted when it was delivered to Representaciones, and that the owner of merchandise would claim it by presenting an identification card. Martinez attached three additional documents to his Amended Verified Complaint: (1) a commerce certificate for Representaciones issued by the government of Colombia, certifying the "existence" and "representation" of Representaciones; (2) the shipment invoice dated July 1, 2003 for the hydro pneumatic water pump with a unit price of $520, identifying Pack Mail as the "shipper" and Representaciones as the "consignee;" and (3) the shipping label from Pack Mail, addressed from Francisco

4

J. Rubalcaba Ortiz to Representaciones.

On April 28, 2004, the Government moved to strike or dismiss Martinez' claim on the ground that he lacked the necessary Article III standing to assert entitlement to the currency because he had failed to demonstrate a sufficient ownership interest. The district court denied the Government's motion, holding that:

> Martinez has demonstrated by a preponderance of the evidence that he has standing to contest the forfeiture of the Defendant currency, although he has yet to prove the merits of his ownership claim. Whether or not the Defendant currency does, in fact, belong to Martinez is a matter better dealt with on summary judgment or at trial. The allegations and evidence proffered by Martinez, which are consistent with the allegations of the Verified Complaint, are sufficient to raise a serious question about the Claimant's ownership of the Defendant property.

During the discovery period that followed the district court's order, the Government pursued a deposition of Martinez. However, Martinez terminated the interrogation prior to the completion of the Government's questioning, and did not comply with the district court's order directing him to resume the deposition. Martinez produced no additional evidence in support of his alleged ownership interest in the defendant currency.

The Government moved for summary judgment, requesting that the district court enter judgment that probable cause existed to justify the seizure. In his response, Martinez relied upon the evidence already before the district court in

5

conjunction with his deposition testimony, asserted legal defenses and made requests to reduce the amount seized based upon principles of mitigation and proportionality. The district court found that the undisputed facts established that probable cause existed to seize the defendant currency pursuant to 19 U.S.C. § 1595a(c)(1)(A)[1] because the currency: (1) was merchandise; (2) which was smuggled, or clandestinely imported or introduced; (3) into the United States; (4) contrary to law.[2] However, the district court partially denied the Government's motion for summary judgment, finding that: "Trial will proceed . . . as to facts that may bear upon Martinez' request for proportionality and mitigation of forfeiture, as well as his entitlement to and ownership of the Defendant currency." In the same order, the district court denied the Government's renewed motion to dismiss, which again asserted that Martinez lacked standing to contest the forfeiture. The district court found that:

> Martinez has stated under oath, at his deposition, that the Defendant currency was payment to him from Rubalcaba for 60 tons of marble purchased from Martinez's marble company, Retalmar. Documents regarding the sale of

---

[1] Section 1595a(c)(1)(A) provides that: "Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows: (1) The merchandise shall be seized and forfeited if it (A) is stolen, smuggled, or clandestinely imported or introduced."

[2] The Government contends that the defendant currency was transmitted in violation of the laws of the United States, Mexico and Colombia. In support of its position, the United States presented an expert report that concluded that the defendant currency was transmitted in violation of the laws of both Mexico and Colombia. Martinez did not challenge the conclusions of the Government's expert as incorrect.

marble are presumably in the possession of Jose Castro Gallego, Rubalcaba's representative in Colombia. The United States has not presented or suggested any other possible owner of the Defendant currency, nor identified a basis for striking or dismissal of the claim of Martinez. At trial, Martinez still has the burden of proof on his claim of ownership.

The district court then proceeded to a bench trial regarding Martinez's claims to ownership of the defendant currency and his request for proportionality and mitigation. Martinez did not appear at trial and his counsel presented no new evidence. Moreover, the district court did not allow the introduction of Martinez's deposition as evidence because the court properly found that Martinez was the cause of his own absence at trial.[3] Martinez was left to rely heavily on the Joint Pre-trial Stipulation, paragraph 29, which stated that "Consignee, Representaciones C.A.C., identified the Claimant as the intended recipient of the water tank with currency." In a brief memorandum opinion following trial, the district court found that:

> The record evidence simply does not establish that [Martinez] is the owner of the defendant currency. He has certainly presented a claim as owner of the defendant currency, and the consignee identified him as the intended recipient of the water tank with the hidden currency. However, that evidence, standing

---

[3] Martinez claimed that he was "unavailable" to appear at trial pursuant to Federal Rule of Evidence 804(b) because the United States denied his visa application. The district court found, however, that Martinez' failure to appear did not fall within Rule 804(b) because Martinez had been given approximately one year to make preparations to enter the United States for purposes of testifying at trial; Martinez chose to ignore the Government's offers to assist him in the visa application process; Martinez had falsely stated in his visa application that he intended to travel to the United States as a tourist, never mentioning the pending trial; and Martinez apparently made no effort to appear at trial via video conference. Martinez does not appeal this evidentiary ruling.

alone, is insufficient to support a finding that Jesus Santos Martinez is or was the owner of the defendant currency.

The district court did not reach Martinez' request for mitigation or proportionality, "as such request [was] premature absent a finding that he is the owner of the defendant currency." It is from both the partial grant of summary judgment and the district court's final judgment following trial that Martinez now appeals.

## Standards of Review

Following a bench trial, we review a district court's findings of fact for clear error and its conclusions of law de novo. See A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp., 334 F.3d 997, 1003 (11th Cir. 2003). The issue of whether the plaintiff lacks standing is jurisdictional and, as an issue of law, receives de novo review. See London v. Wal-Mart Stores, Inc., 340 F.3d 1246 (11th Cir. 2003). Further, we review de novo the district court's partial grant of summary judgment to the Government. See Gilmour v. Am. Nat'l Red Cross, 385 F.3d 1318, 1321 (11th Cir.2004). Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Walton v. Johnson & Johnson Servs., 347 F.3d 1272, 1279 (11th Cir. 2003).

## Discussion

Standing "is the threshold question in every federal case, determining the

power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 499 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims and the court is powerless to continue." CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (internal citations and quotations omitted). Further, "[t]he party invoking federal jurisdiction bears the burden of proving standing." Bischoff v. Osceola County, 222 F.3d 874, 878 (11th Cir. 2000).

It is well settled that a claimant must demonstrate an "ownership or possessory interest in the property seized" to establish standing under Article III to contest a civil forfeiture of seized property. United States v. $500,000, 730 F.2d 1437, 1439 (11th Cir. 1984). Moreover, a claimant asserting that he has standing to contest a forfeiture bears the burden at all stages of litigation of establishing his interest. See id.

Since standing is not a mere pleading requirement but, rather, is an indispensable part of a claimant's case, the alleged ownership interest in the seized property must be supported in the same way as any other matter on which the claimant bears the burden of proof. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In other words, the claimant must move forward "with the manner and degree of evidence required at the successive stages of the litigation." Id.; see Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 115 (1979) ("We conclude that

9

the facts alleged in the complaints and revealed by initial discovery are sufficient to provide standing under Art. III. It remains open to petitioners, of course, to contest these facts at trial."). The Supreme Court has stated the requirement to plead and prove standing as follows:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken as true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

Lujan, 504 U.S. at 562 (internal citations and quotations omitted).

Here, Martinez argues that the district court erred by requiring him to prove that he "owned" the defendant currency even though a possessory interest is sufficient under the law to establish standing. See $500,000, 730 F.2d at 1439. Martinez asserts that he established a sufficient possessory interest through evidence that he was the intended "recipient" in Colombia of the carton containing the defendant currency. To support his argument, Martinez relies primarily upon Fonseca v. Regan, 734 F.2d 944 (2d Cir. 1984) and Dunbar v. United States, 502 F.2d 506 (5th Cir. 1974). But neither Fonseca nor Dunbar support Martinez' position because both are distinguishable and, what is more, the important point of distinction serves to

10

demonstrate the fatal flaw in Martinez' claim. In <u>Fonseca</u>, the claimant's baggage, for which he held a baggage claim check, was misdirected by the airline. In <u>Dunbar</u>, the claimant mailed a package to a friend for safekeeping, but addressed the mail matter to the firm for which the friend worked rather than addressing it to the friend in person. Thus, in both cases, the claimant, unlike Martinez, had been in actual possession of the subject property and intended to remain in constructive possession when he temporarily relinquished physical control to another. Here, by contrast and without dispute, Martinez was never in actual possession of the currency; and to the extent that he might have had an expected or inchoate possessory interest in Colombia as the "recipient" of the property, that is clearly not sufficient to establish even a constructive possessory interest in the property as it rested <u>in Miami</u>. The currency at that point was in transit and still belonged to Rubalcaba.

The fact that Representaciones identified Martinez as the intended recipient of the carton is a far cry from proving that Martinez had an ownership or possessory interest in the carton containing the defendant currency. Further, while the district court did not consider Martinez' deposition testimony - in which Martinez asserted under oath that the currency was payment for marble delivered to Rubalcaba - that testimony consisted merely of self-serving assertions. Thus, Martinez' deposition testimony is no help to his cause. Martinez presented no documentary or other

11

evidence of the alleged Rubalcaba marble transaction or, for that matter, evidence that he was ever involved in any transaction involving marble.[4] Accordingly, Martinez has not produced evidence sufficient to establish that he either owned or possessed the carton containing the defendant currency, and the district court was correct in finding that he lacks standing to contest the forfeiture.[5]

The judgment of the district court is AFFIRMED.

---

[4] Even assuming the truth of Martinez' claim that the currency was payment for a shipment of marble, Martinez presented no evidence that would convince this Court that he is anything other that an unsecured creditor of Rubalcaba, and, as such, has no interest in or legal right to the defendant currency itself. See United States v. Four Million, Two-Hundred Fifty-Five Thousand Dollars ($4,255,000), 762 F.2d 895, 907 (11th Cir. 1985).

[5] Martinez' other bases for appeal lack merit. First, the district court correctly determined that it had subject matter jurisdiction over the in rem civil forfeiture proceeding in this case. See 28 U.S.C. § 1355(a). Second, the district court properly entered partial summary judgment in favor of the Government on the issue of probable cause for forfeiture under § 1956a because the defendant currency was introduced "into the United States" as defined by that section. See United States v. Lehman, 225 F.3d 426, 428-29 (4th Cir. 2000) ("In sum, we hold that these goods were introduced when they were moved from the ship that transported them to the warehouse on United States soil."). Third, the district court appropriately refused to entertain Martinez' claim that the forfeiture of the entire $960,000 was constitutionally excessive because Martinez lacked standing to contest the forfeiture. Fourth, the Court need not address the merits of Martinez' claim that the search and seizure of the carton was unlawful because Martinez' motion raising this issue before the district court was properly denied as untimely. See Lemon v. Dugger, 931 F.2d 1465, 1468 (11th Cir. 1991).

12